## Mechanics Bank of Brooklyn, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 9755.   Promulgated November 8, 1927.

*H. A. Mihills, C. P. A.*, for the petitioner.
*J. E. Marshall, Esq.*, and *H. D. Thomas, Esq.*, for the respondent.

1

6

OPINION.

LITTLETON: The first point presented relates to losses claimed on the sale of certain real estate. In the petition, errors were assigned on account of seven pieces of property, but at the hearing petitioner abandoned its claim with respect to five of the properties, thus leaving only the Schermerhorn and Rockaway Avenue properties for consideration.

As to the Schermerhorn property, we have found that it was acquired by the petitioner in 1915 when a customer defaulted on a loan of $2,825 which was secured by this property. The property when taken was subject to a mortgage of $9,500 which the petitioner assumed. Its cost, therefore, was $12,325. The difference between the selling price of $8,392.38 and the foregoing cost, less accrued depreciation of $466.67, represents a deductible loss in 1919 when the sale was made.

With respect to the Rockaway Avenue property, the evidence we have as to its cost is that it was taken over in 1914 at its book value when the assets of the Nassau Trust Co. were acquired through a merger in which stock of the petitioner was issued for the stock of the Trust Company. We have no segregation, showing the cost applicable to the various assets. Nor do we know anything as to the value of the various assets at this time. We regard the foregoing evidence insufficient to establish cost to the petitioner and, therefore, any loss on account of the sale of this property must be denied.

The next issue relates to the status of the accounts which the petitioner had with the Union Bank and the Lafayette Trust Co. when these banking institutions were placed in receivership in 1912. We are satisfied from the evidence that the petitioner's practice of charging "slow" accounts to a suspense account, which was the method pursued in these instances, was not because of a determination of the worthlessness of the accounts and that so long as the petitioner retained one dollar in the suspense account it indicated that the petitioner did not consider the accounts worthless, and had not effectively charged them off. The evidence is also conclusive to the effect that the accounts with the Union Bank in the amounts of $26,853.37.

$5,069.17, and $1,919.93 were not determined to be worthless until 1924 and that in 1921 the petitioner was justified in considering an estimated future recovery of only 3 per cent thereon. The balance remaining in the accounts, after taking into consideration prior recoveries and this estimated future recovery, is deductible from gross income in 1921 under the provisions of section 234 (a) (5), Revenue Act of 1921. Since these accounts had not been determined to be worthless in their entirety prior to 1921 and since under the revenue acts prior to the Revenue Act of 1921, a partial write-off of a debt is not permissible (*Steele Cotton Mill Co.*, 1 B. T. A. 299, and *Murchison National Bank*, 1 B. T. A. 617), the balance remaining in these accounts, after considering prior recoveries, should be restored to invested capital for each of the years on appeal. We are likewise satisfied that the account with the Lafayette Trust Co. in the amount of $8,769.79 was not determined to be worthless until 1921, at which time the remainder then outstanding, after considering prior recoveries, was a proper deduction from gross income. Invested capital should also be adjusted in a manner similar to that outlined for the accounts with the Union Bank. In view of the above conclusions, it was obviously erroneous for the Commissioner to treat recoveries on the foregoing accounts as taxable income for the years on appeal.

In the next place the petitioner contends that the respondent has made an erroneous reduction of its invested capital to the extent of $13,489.96 on account of certain debts owing by P. J. Murray & Co., which were partially written off prior to 1918. The entire loans were determined to be worthless in 1918 when a loss on the entire account was claimed. In claiming the loss in 1918, petitioner made no restoration of the amounts previously written off, and petitioner's balance sheet at December 31, 1918, contained no part of this account.

A reduction of petitioner's surplus on this account as it appeared in the balance sheet at December 31, 1918, was erroneous, since it meant a reduction which had already been effected. The petitioner's contention on this point is, therefore, sustained.

The final issue arises on account of a reduction of petitioner's surplus because of an alleged insufficiency of depreciation taken in prior years. Prior to 1918, petitioner made no provision for depreciation as such on its books of account. The evidence shows that at least major capital items with respect to buildings were properly capitalized, but that in the case of furniture and fixtures many items of a capital nature were charged to expense which should have been capitalized. The evidence fails to show that repairs and maintenance

tended to offset depreciation sustained on buildings or that the building account was understated on account of a failure to include therein proper capital items. On one occasion—in 1914—a reduction was made in the value of assets as they appeared on the books, but this was done for reasons of conservatism and applied largely to properties recently taken over which, one of petitioner's witnesses stated, was valued in this way, in order to make the property more salable. Petitioner's vice president, upon being cross-examined in regard to depreciation, made the following statements.:

Q. Why didn't you write the bank buildings down from year to year for depreciation purposes?

A. We did not write them down, but our bookkeeping methods were wrong.

Q. You do not deny the fact that depreciation occurred on these buildings from year to year?

A. Appreciation?

Q. Depreciation?

A. Depreciation did occur on the buildings, but we did not change our book value of buildings by charging depreciation. We have not done that.

At the hearing petitioner presented a schedule with costs and dates of acquisition of buildings and equipment as shown by its books, in which depreciation to December 31, 1916, was computed at the same rates as used by the revenue agent whose examination formed the basis of the respondent's reduction. This showed certain errors on the part of the revenue agent as to dates of acquisition and otherwise, with the net result that instead of accrued depreciation on buildings and equipment to December 31, 1916, of $289,962.09 as claimed by the respondent, there is shown an amount of $197,248.50.

On a consideration of the evidence, we are of the opinion that petitioner's surplus for the years on appeal should be adjusted by considering accrued depreciation on buildings and equipment to December 31, 1916, as $197,248.50 and the depreciation allowed the petitioner in determining taxable income for 1917 and subsequent years. In addition, the adjustment should take into consideration an amount of $16,108.96 which was deducted by the respondent as depreciation to December 31, 1917, on outside real estate which was sold in 1918 and, therefore, was not an asset subject to reduction in 1919 and subsequent years. The Commissioner concedes that his adjustment was erroneous in this respect, and the reduction computed above of $197,248.50 does not take into account this item. To the extent, therefore, that depreciation allowed the petitioner for 1917 and subsequent years does not take into account this item, adjustment should be made therefor in a determination of petitioner's invested capital for the years on appeal.

With respect to the reduction made in petitioner's surplus on account of depreciation accrued on furniture and fixtures to January 1, 1917, in the amount of $34,207.99, the evidence shows that the petitioner followed a policy of charging many items of this character to expense which should have been capitalized, and that in the case of safe deposit boxes rentals therefrom were credited to the asset accounts and thus served to reduce the cost as shown by petitioner's books. We are convinced that a true statement of the furniture and fixture account at January 1, 1917, would not show an asset value less than that reflected by petitioner's books and, therefore, the action of the Commissioner in making a reduction of $34,207.99 on account of alleged accrued depreciation to January 1, 1917, is reversed.

The remaining issues relate entirely to the reduction of invested capital for payment of taxes within the taxable periods for preceding periods and as to these the petitioner admits that proper adjustment should be made therefor under the provisions of section 1207, Revenue Act of 1926.

*Judgment will be entered on 20 days' notice, under Rule 50.*

Considered by Smith, Trussell, and Love.