J. Sidney Lanier and Elizabeth Lanier v. Commissioner.
Lanier v. Commissioner
Docket No. 1414-64.
United States Tax Court
T.C. Memo 1966-14; 1966 Tax Ct. Memo LEXIS 266; 25 T.C.M. (CCH) 68; T.C.M. (RIA) 66014; January 19, 1966
J. Sidney Lanier, pro se. Arthur P. Tranakos and Winfield A. Gartner, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1960 and 1961 in the amounts of $1,544.46 and $386.67, respectively and additions to tax under section 6653(a) of the Internal Revenue Code of 1954[1] in the amounts of $77.22 and $22.03, respectively. The issues for decision are (1) whether respondent erred in using a modification of the net worth method which he refers to as the "Application and Source" method in determining petitioners' income for each of the years here in issue; (2) if respondent *267 did not err in the method he used in determining petitioners' adjusted gross income, what is the proper amount of income so computed in each of the years here in issue; and (3) whether respondent erred in determining additions to tax for negligence in each of the years here in issue. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife residing in College Park, Georgia, filed joint income tax returns for each of the years 1960 and 1961 with the district director of internal revenue, Atlanta, Georgia. On June 21, 1963, a document marked "Corrected Return" for 1960 signed by J. Sidney Lanier with the notation "for both" was mailed to the respondent's agent who had made an investigation of and report as to petitioners' income tax liability. Petitioners' original return for 1960 reported as "Adjusted Gross Income" a loss of $522.84 and the document marked "Corrected Return" reported as "Adjusted Gross Income" a loss of $459.46. Each of these documents reported as salary received from Citizens and Southern National Bank, where Elizabeth B. Lanier (hereinafter referred to as Elizabeth) was employed during the years here *268 in issue the amount of $4,586.09 and taxes withheld of $704.55. Each of these documents contained a schedule entitled "Schedule C and Dividends, Rents, Interests, Inc.", which listed an amount of "Bank Deposits Less Borrowed Money" to which was added an amount set forth under the designation "Cash Not Deposited" which was comprised of items listed as "Rent," "Interest," and "Dividends." The total of these three items was listed as "Total Income (Not incl. salary)" and from this total was deducted items listed as "Interest Paid," "Taxes Paid," "Insurance," and "Other Expenses." Under the title "Other Expenses" an item of "Depreciation" was listed. The resultant figure on each of these schedules showed a loss slightly in excess of $5,000.00. Among the properties listed on the depreciation schedule were "407 Lyle" showing a date acquired of June 1, 1960, and a cost of $6,000 and "409 Lyle" showing a date acquired of August 1, 1960, and a cost of $6,000. Petitioners' return for 1961 showed Elizabeth's salary as $4,672.68 with tax withheld of $720.15, a loss of $1,165.06 from "Schedule C." This schedule contained a computation prepared in substantially the same manner as the schedule *269 for 1960 entitled "Schedule C and Dividends, Rents, Interests, Inc." An adjusted gross income of $3,507.62 was reported on petitioners' 1961 return. J. Sidney Lanier (hereinafter referred to as petitioner) is a member of the Georgia Bar and is a practicing attorney. Respondent's determination of petitioners' taxable income for each of the years here involved is based on a computation which in effect adds to the amounts respondent determined to be increases in petitioners' assets the amounts of their personal living expenses and subtracts from this total the total of the amounts of increases in petitioners' liabilities plus adjusted gross income reported. The amount so determined by respondent is stated to be petitioners' understatement of income and respondent increases petitioners' income as reported by such amounts. Respondent's determination was based on the following schedule of Assets and Liabilities and Personal expenses: ASSETS
12/31/59
12/31/60
12/31/61
Real Estate
1065 Capitol Ave.
$ 3,500.00
$ 3,500.00
121 Evans Drive (residence)
$13,800.00
13,800.00
13,800.00
409 Lyle Ave.
6,500.00
6,500.00
407 Lyle Ave.
6,000.00
6,000.00
3273 Sims Dr. (frame duplex)
10,000.00
10,000.00
10,000.00
616 Lyle Ave. (frame duplex)
18,500.00
18,500.00
18,500.00
Thomson, Ga. (brick store)
4,000.00
4,000.00
4,000.00
TOTAL
$46,300.00
$62,300.00
$62,300.00
Acts. Rec. Bertha Moreland (966
Dimmock St.)
Proceeds of $3,000 loan made to
$ 2,098.95
Atlanta Federal Savings & Loan
Amounts charged to claims: Check to Bobby Milam 6-10-60
$ 525.00
Check to Bobby Milam 10-6-60
839.08
Check to Georgia Savings & Loan
489.90
2-15-60
Check to Atlanta Federal Savings
1,510.05
& Loan
Paid by Lanier on above loan (
440.00
$40 X 11)
TOTAL
3,804.03
Total Expenditures
$ 5,902.98
Deduct: Rental payments by Bertha
$ 660.00
Moreland ( $60 X 11)
Cash retained on above loan
588.90
1,248.90
Accts. Receivable, 12/31/60
$ 4,654.08
1961 Transactions: Rental payments by Bertha
$ 720.00
Moreland ( $60 X 12)
Paid by Lanier on above loan (
480.00
240.00
$40 X 12)
Accts. Receivable, 12/31/61
$ 4,414.08
Notes Receivable, Real Estate
409 Lyle Ave. 2d Mtge.
$ 3,696.71
0
0
407 Lyle Ave. 2d Mtge.
3,692.67
0
0
TOTAL
$ 7,389.38
0
0
Miscellaneous Assets
Books
0
$ 253.90
$ 253.90
Cabin Cruiser
0
2,500.00
2,500.00
TOTAL
0
$ 2,753.90
$ 2,753.90
LIABILITIES
Notes Payable, Real Estate
1065 Capitol Ave.
$ 2,459.34
$ 2,192.89
121 Evans Drive
$13,190.90
12,919.44
12,633.29
409 Lyle Ave.
3,319.78
2,974.41
407 Lyle Ave.
1,852.54
1,528.31
3273 Sims Dr.
5,234.14
5,545.56
5,295.45
616 Lyle Ave. - 1st Mtge.
8,375.62
7,923.14
7,492.16
616 Lyle Ave. - 2d Mtge.
564.01
365.40
158.70
Flowers Lumber Co.
785.14
87.14
87.14
Georgia Savings Bank
400.00
500.00
966 Dimmock St.
2,819.90
3,153.42
$28,149.81
$37,692.24
$36,015.77
Miscellaneous Liabilities
Books
0
$ 175.00
$ 55.00
Cabin Cruiser
0
1,701.00
772.00
TOTAL
0
$ 1,876.00
$ 827.00
Reserve for Depreciation
1065 Capitol Ave.
$ 43.75
$ 218.75
409 Lyle Ave.
75.00
375.00
407 Lyle Ave.
150.00
450.00
3273 Sims Dr.
$ 1,000.00
1,500.00
2,000.00
616 Lyle Ave.
7,718.75
8,643.75
9,568.75
Thomson, Ga.
320.00
480.00
640.00
TOTAL
$ 9,038.75
$10,892.50
$13,252.50
PERSONAL EXPENSES
1960
1961
Operating expenses
$ 1,800.00
$ 1,800.00
Int., ins. and taxes on residence
892.54 c
877.85
Auto note
384.55
0
Charge acct. service (W)
300.00
300.00
Clothing
500.00
500.00
Insurance, Life (H)
149.68 a
149.08 a
Utilities
250.00
250.00
Investors Diversified Service
199.43 b
199.43 b
Taxes: Refund
[437.19)
$ (704.55)
Withheld
704.55
327.36 d
720.15
15.60
TOTAL
$ 4,802.96
$ 4,091.96
Deduct: Dividend exclusion
$ 50.00
$ 50.00
Interest reported
38.20
- 88.20
42.89
- 92.89
Net
$ 4,714.76
$ 3,999.07
*270 The parties have stipulated the facts with respect to all the items on this schedule except the inclusion of the 409 and 407 Lyle Avenue properties in assets at December 31, 1960 at $6,500 and $6,000, respectively, the failure to include an account receivable from Bertha Moreland in the amount of $4,750 at December 31, 1959, and whether petitioner's bank deposits at December 31, 1960 should be reduced by the amount of $297.92 of checks which were drawn against the account before December 31, 1960, but did not clear the bank until after that date. We will not repeat the stipulated facts which we have incorporated by reference since these facts and our conclusion that petitioner's bank balance at December 30, 1960, should be reduced by the checks drawn prior to that date are reflected in the computation of petitioners' adjusted gross income for each of the years here in issue which will *271 be set forth as our ultimate findings of fact. In 1959 petitioner owned two pieces of property, one located at 407 Lyle Avenue in Atlanta, Georgia, and the other at 409 Lyle Avenue, Atlanta, Georgia. On or about July 1, 1959 petitioner sold his property located at 407 Lyle Avenue for a stated price of $6,000. At that time there was a first mortgage on this property of approximately $2,000. Petitioner received no cash at the time of the sale but took a note secured by a second mortgage for the entire amount of the selling price in excess of the first mortgage on the property or approximately $4,000. On or about July 1, 1959, petitioner sold the property located at 409 Lyle Avenue for a stated price of $6,500. At the time he sold this property there was a first mortgage outstanding thereon. Petitioner received no cash at the time of the sale but took a note secured by a second mortgage for the entire difference between the sales price and the amount of the first mortgage, the note which he took being in the approximate amount of $3,700. At December 31, 1959, the balance due on the second mortgage on 407 Lyle Avenue was $3,692.67, and the purchaser was in default on his mortgage *272 payments. In order to avoid foreclosure, the purchaser quitclaimed the property to petitioner on or about June 1, 1960. The purchaser of the property located at 409 Lyle Avenue placed a third mortgage on that property. In 1960, the third mortgagee of the property at 409 Lyle Avenue considered the payments on his third mortgage to be in default and foreclosed. Petitioner obtained title to the property from the third mortgagee, subject to the first mortgage, on or about August 1, 1960. An individual named Claudia Dixon, who was a sister of Bertha B. Moreland, died intestate in 1959. At the time of her death she owned property located at 966 Dimmock Street in Atlanta. There was outstanding at the time of Claudia Dixon's death a loan from the Georgia Savings Bank and Trust Company secured by a mortgage on the Dimmock Street property, the outstanding balance on such loan being in an amount of around $2,500. An individual named Albert Roy claimed to be Claudia Dixon's common law husband. Claudia Dixon had six brothers and sisters other than Bertha Moreland and each of these brothers and sisters gave a quitclaim deed of their interest in the property at 966 Dimmock Street to Bertha Moreland. *273 Albert Roy and Bertha Moreland each claimed rights in the property. They each made some payments on the mortgage outstanding on the property but as of June of 1959 neither had been able to keep the payments current and the bank was threatening to foreclose its mortgage. Petitioner, who was representing Bertha Moreland as her attorney, agreed to assume liability on this mortgage with the bank and obtain an agreement of the bank not to foreclose on the mortgage. In return for petitioner's agreement in this respect Bertha Moreland gave him a note for $4,750 dated June 30, 1959, payable in monthly installments of $47.50 secured by a deed to the property at 966 Dimmock Street, which conveyance was stated to be made to secure a debt of $4,750 under section 3306 of the Code of Georgia. During 1959 petitioner did not receive any payments on this note nor was it intended that he would receive payments, the intent of the parties being that any payments that Bertha Moreland could make would be made on the loan on the property from the Georgia Savings Bank and Trust Company. Around the first of January 1960, payments on the mortgage again were in default and petitioner was unable to refinance *274 the property without having title in his name. He, therefore, arranged with the lawyer representing Albert Roy that Bertha Moreland and Albert Roy would each give to him a quitclaim to their interest in this property so that the property would be recorded in his name and he could place a mortgage on the property with which to pay off the mortgage to the Georgia Savings Bank and Trust Company. Both of these persons did give petitioner a quitclaim deed, and petitioner placed a mortgage of approximately $3,000 on the property. A portion of the proceeds from this mortgage was used to pay off the mortgage held by the Georgia Savings Bank and Trust Company. A portion of the balance of the $3,000 borrowed by petitioner on the Dimmock Street property was given by him to the attorney for Albert Roy and the balance was credited by petitioner against amounts owed to him by Bertha Moreland for fees. In connection with an agreement by Bertha Moreland to increase the amount of the mortgage on the Dimmock Street property, petitioner agreed effective sometime in 1961, to decrease somewhat the amount of the note to him from Bertha Moreland. Subsequent to December 31, 1961, further steps were taken *275 with respect to this property whereby it was arranged that Bertha Moreland obtain any interest Albert Roy might have and thereafter the property was sold. Petitioner received a fee from Bertha Moreland who was the equitable owner of the property at the time it was sold and cancelled the note which was held as security for the payment of the mortgage petitioner placed on the property without receiving any payment for his own use on the note at any time. The following shows for the dates indicated petitioner's assets and liabilities, with increases in assets and the amounts of personal living expenses shown under the designation "Application" and the decreases in assets and increases in liabilities plus adjusted gross income reported with an adjustment shown under the designation "Source." Dec. 31,
Dec. 31,
1959
1960
Application
Source
Assets
Cash in bank (S) [1]
$ 0.60
$ 467.99
$ 467.39
Cash in bank (E) [2]
327.84
218.10
$ 109.74
Savings account (E)
776.85
1,120.90
344.05
Savings account (E)
0
0
Real estate
46,300.00
62,300.00
16,000.00
Notes receivable secured by
second mort-
gages [3]
7,389.38
0
0
7,389.38
Miscellaneous assets [4]
0
2,753.90
2,753.90
Liabilities
Notes payable [5]
28,149.81
34,872.34
6,722.53
Miscellaneous [6]
0
1,876.00
1,876.00
Reserve for depreciation
9,038.75
10,892.50
1,853.75
Personal Living Expenses
5,101.83
Adjusted Gross Income Reported
(522.84)
Adjustment by Respondent for
Disbursement Overstated [7]
Totals
$24,667.17
$17,428.56
Understatement of income
(Application minus source)
$ 7,238.61
Income reported
(522.84)
Adjustment for disbursement
0
overstated
Adjusted gross income
$ 6,715.77
*276 Dec. 31,
1961
Application
Source
Assets
Cash in bank (S) [1]
$ 47.78
$ 419.61
Cash in bank (E) [2]
376.43
$ 158.33
Savings account (E)
1,510.01
389.11
Savings account (E)
305.66
305.66
Real estate
62,300.00
Notes receivable secured by
second mort-
gages [3]
0
Miscellaneous assets [4]
2,753.90
Liabilities
Notes payable [5]
32,862.35
2,009.99
Miscellaneous [6]
827.00
1,049.00
Reserve for depreciation
13,252.00
2,360.00
Personal Living Expenses
3,671.91
Adjusted Gross Income Reported
3,507.52
Adjustment by Respondent for
270.00
Disbursement Overstated [7]
Totals
$ 7,584.00
$ 6,557.13
Understatement of income
(Application minus source)
$ 1,026.87
Income reported
3,507.52
Adjustment for disbursement
270.00
overstated
Adjusted gross income
$ 4,804.39
*277 Ultimate Facts 1. Petitioner has failed to show that he kept any books and records for 1960 and 1961 which would accurately reflect his income and therefore has failed to show error in respondent's use of a modified net worth method in computing his taxable income for these years. 2. Petitioner has failed to show that respondent erred in determining an addition to tax for negligence under section 6653(a). 3. For the calendar year 1960 petitioners had adjusted gross income of $6,715.77 and for the calendar year 1961, they had adjusted gross income of $4,804.39, computed as heretofore set forth. Opinion At the trial petitioners made no showing of the type of books and records which they kept, if any, other than a few checks, bank statements and miscellaneous memoranda. Petitioners have failed to show error in respondent's use of a modified net worth method to determine their income for 1960 and 1961. Where a taxpayer fails to keep adequate records, the respondent is authorized to compute income by whatever method will, in his opinion, clearly reflect that taxpayer's income. Harold E. Harbin, 40 T.C. 373, 377 (1963) and cases there cited. While as shown by our *278 findings we consider some adjustments necessary in respondent's computation of petitioners' income, we do not consider the method he used to be unreasonable under the circumstances present in this case. Respondent refers to his method of determination of petitioners' income for 1960 and 1961 as an "application and source" method or a modified net worth method. It is in fact nothing more than a net worth method. As we understand the computation, respondent has taken each item of petitioners' assets and listed any increase in its amount from the end of one year to the end of the next under the title "application" and has listed any such decrease in amount of any such item under the title "source". Respondent has listed any increase in the amount of any liability of petitioners from the end of one year to the end of the next under the title "source" and has listed any such decrease in any item of liability under the title "application". It is obvious that the difference in the total of the amounts listed under "application" and the total of the amounts listed under "source" in any year will be the exact amount of the increase or decrease in petitioners' net worth for such year computed *279 from the same amounts for assets and liabilities. Why respondent in this particular case chose to go through the difficult and confusing computation of "application and source" he does not explain. Normally in a net worth computation the total amount of a taxpayer's personal living expenses is added to the increase in net worth to obtain the amount of that taxpayer's adjusted gross income for the year involved. In the instant case, respondent has included the amount of petitioners' personal living expenses under the column "application" and the amount of adjusted gross income reported by petitioners under the column "source". The total of the amounts listed under "source" is then subtracted from the total of the amounts listed under "application" and the remainder is determined by respondent to be "Understatement of income". To determine petitioners' adjusted gross income, respondent subtracts the loss in 1960 and adds the income in 1961 as reported by petitioners to the "Understatement of income" determined by him. The final result of this complicated computation is exactly the same as would be reached in each year by adding to petitioners increase in net worth for that year determined *280 from the same items of assets and liabilities, the amount of petitioners' personal living expenses for such year to arrive at petitioners' adjusted gross income. Since the computation which respondent has made does not in substance differ from a net worth plus personal living expenses computation, we consider that respondent has in effect computed petitioners' income on a net worth plus personal living expenses basis and will consider petitioners' various objections to the computations accordingly. We conclude that petitioner was correct in his statement that the only year in which there were uncashed checks outstanding against the balance in his bank account as shown by the records of the bank was 1960. We have therefore considered that the portion of petitioners' bank balance which was an asset is the amount shown on the records of the bank reduced by checks which had been drawn prior to December 31, 1960, but had not cleared the bank. If we were to consider the entire amount shown on the bank's records to be an asset of petitioners, we would of necessity have to consider the outstanding checks to be liabilities. Since the same result would be reached by increasing petitioners' *281 liabilities by the outstanding checks as of December 31, 1960, we have followed petitioners' method of reducing his bank balance by the amount of such checks. The next item in issue between the parties is respondent's inclusion of the properties at 409 and 407 Lyle Avenue at values of $6,500 and $6,000, respectively, in computing the amount of petitioners' real estate assets as of December 31, 1960 and 1961. It is petitioner's position that the fair market value of these properties as of the date he repossessed them in 1960 was not in fact the amount as determined by respondent but a lesser amount. Petitioner testified to some facts tending to substantiate his position in this regard. If this were a case in which respondent had determined that petitioner received income on the repossession of the properties represented by the difference between the fair market value of the properties repossessed and petitioner's basis in the notes cancelled, we would analyze petitioner's testimony and reach some conclusion as to the fair market value of the properties at the date petitioner reacquired them. However, in the instant case, as of December 31, 1959, there was included in petitioners' *282 assets as determined by respondent, notes receivable secured by second mortgages on these two properties. The total amount so included was $7,389.38. As of December 31, 1959 respondent's computation of petitioners' liabilities included no amount because of the first mortgages on these properties even though it is apparent that at December 31, 1959 petitioner was still liable on these first mortgages. The evidence shows that the properties had been sold in 1959 subject to those mortgages. Respondent in his computation included in petitioners' liabilities as of December 31, 1960, notes payable on 409 Lyle Avenue and 407 Lyle Avenue in the respective amounts of $3,319.78 and $1,852.54 or a total of $5,127.32. Respondent considered the reduction in petitioners' assets in 1960 by the cancellation of the $7,389.38 of notes secured by second mortgages on the 409 and 407 Lyle Avenue properties and the increase in 1960 in petitioners' liabilities by the $5,172.32 of notes payable on the mortgages on these properties to be items to be included under "source" in his computation. The effect of what respondent has done in his computation is to off set the inclusion of $12,500 in petitioners' *283 assets because of his repossession of the Lyle Avenue properties by the $12,561.60 total of reduction of assets by notes receivable of $7,389.38 plus the increase in liabilities by the notes payable of $5,172.32. Respondent's computation results in decreasing petitioners' 1960 income by $61.60 because of the Lyle Avenue properties transactions. Petitioners argue that no gain or loss resulted from the repossession of the properties. However, under petitioners' computation, their income for 1960 would in effect be reduced by a loss on these transactions. Petitioners would reduce the value of the real estate included in assets in respondent's computation because they considered the fair market value of the Lyle Avenue properties in 1960 to be less than the amount shown in respondent's computation but they would not change the other items relating to these properties as shown in respondent's computation. The net effect of petitioners' contention is to allow them a deductible loss from repossession of the Lyle Avenue properties. Petitioners have failed to show that they sustained any such loss. To what extent, if any, petitioners included the notes received on these two properties in *284 their income in 1959 is not shown. The indication from the record is that petitioners reported no gain from the sale of these properties in 1959. There is certainly as much indication in the record that the notes secured by the second mortgages on these properties did not have a fair market value of their face amount as there is that the properties themselves might have had a fair market value of less than the amount at which respondent included them in petitioners' income. In any event, respondent has in no way increased, but has in fact decreased by $61.60 petitioners' 1960 income by his method of handling the various items with respect to the 409 and 407 Lyle Avenue properties and petitioners have failed to show that they sustained any loss on the repossession of these properties. We therefore conclude that petitioners have failed to show that respondent erred in including the Lyle Avenue properties in their assets at $12,500 even if the fair market value of such properties at the date they were repossessed was less than the amount used by respondent. Respondent's determination is in effect that petitioners had a $61.60 loss on the overall transaction and petitioners have shown *285 no greater loss. Absent any showing to the contrary the cost or basis of the property repossessed can properly be considered to be the amount of the notes thereon cancelled on repossession, plus the amount of the first mortgage assumed. Mechanics Bank of Brooklyn, 9 B.T.A. 1, 6 (1927). The next item which petitioners contest is respondent's failure to include in their assets as of December 31, 1959, an amount of $4,750 representing an account receivable from Bertha Moreland or respondent's failure to exclude the Bertha Moreland account receivable at December 31, 1960 and 1961. The facts establish, and we have so found, that petitioners did have a note from Bertha Moreland in the amount of $4,750 as of December 31, 1959, and a conveyance of the property at 966 Dimmock Street made for the purpose of securing this note. Respondent even recognizes that the facts do establish that this account receivable from Bertha Moreland was outstanding at December 31, 1959. He argues, however, that his computation is correct since he has included in petitioners' liabilities as of December 31, 1960, and December 31, 1961, the amounts of $2,819.90 and $3,153.42, respectively as notes *286 payable with respect to this property at 966 Dimmock Street. It is readily apparent that the liabilities which respondent showed in his computation with respect to these properties do not offset the amounts included by respondent in petitioners' assets. Therefore some adjustment is necessary in respondent's computation because of either the inclusion of the Bertha Moreland note as of December 31, 1960 and 1961, or failure to include it as of December 31, 1959. Petitioners' primary argument with respect to the Bertha Moreland transaction is that the note should not be included in their net worth statement since petitioner was acting in the nature of a trustee in connection with the transaction. In our view if the note is not to be included, then the mortgage notes on the Dimmock Street property should be eliminated from petitioners' liabilities. Petitioner did retain a very small amount of the monies borrowed on the Dimmock Street properties but he retained these monies as a fee from Bertha Moreland. This entire transaction was more in the nature of petitioner's handling property as a trustee. We, therefore, have viewed the transactions in this manner and eliminated from the computations *287 of assets for any of the periods here involved the Bertha Moreland note and have likewise eliminated as liabilities the notes payable with respect to the Dimmock Street property. We are aware of the fact that this handling results in a portion of the monies borrowed on the Dimmock Street property which was retained by petitioner as a fee being included in his income. However, the evidence is so imprecise that we are unable to determine what amount was so retained by petitioners. Furthermore, if the entire transaction is viewed as petitioner acting as a trustee, then fees paid with borrowed trust funds would be properly includable in his income. The record is totally inadequate to show how petitioners treated this item in computing his taxable income. There is little argument between the parties about the amount of petitioners' personal living expenses in 1960 although petitioners contend on brief that they should be $3,716.83 and respondent contends that they should be $5,101.83. The figures contended for by petitioners ignore the stipulated facts. The parties stipulated that petitioner's operating expenses during 1960 were in the amount of $2,447.66, that State, county and city *288 taxes, interest and insurance with respect to petitioners' personal residence in this year totaled $892.54, that petitioners made payments on an automobile of $384.55, that petitioners paid to Investors Diversified Services $199.43, that Elizabeth made payments on her charge account of $300.68 in this year, and that petitioners had expenses for clothing of $298.73 and paid $149.08 on life insurance. The parties have likewise stipulated that petitioners had utility expenses of $250 in 1960, and that Elizabeth had withheld from her salary the amount of $704.55 for taxes in 1960. Respondent's computation shows an income tax refund to Elizabeth in 1960 of $437.19 which apparently is not contested since nothing otherwise appears in the record with respect to this item, thus leaving a net payment of income taxes by petitioners in this year of $267.36. These items total $5,190.03 from which respondent's computation deducts $88.20 for items not in dispute and therefore the living expenses as stipulated total $5,101.83 as contended by respondent. The result of our conclusions with respect to the various items at issue between the parties is shown in our ultimate finding that petitioners' *289 adjusted gross income in 1960 was $6,815.37 and in 1961 was $4,794.69. The amount in 1961 is slightly in excess of petitioners' adjusted gross income as determined by respondent. Since respondent has claimed no increased deficiency for 1961, he will be limited to the amount of deficiency as determined if a recomputation of petitioners' tax liability results in a larger deficiency for this year than that determined by respondent. Petitioners make no argument with respect to respondent's determination of additions to tax under section 6653(a) aside from their argument that respondent erred in his determination of any deficiencies. Section 6653(a) provides that if any part of an underpayment in tax is due to negligence or intentional disregard of rules and regulations there shall be added to the tax 5 percent of the underpayment. The burden of showing error in respondent's determination of this addition to tax is upon petitioners. David Courtney, 28 T.C. 658, 669 (1957). Because of petitioners' failure to show error in respondent's determination of additions to tax under section 6653(a), we sustain respondent to the extent of 5 percent of the deficiencies as redetermined *290 in accordance with our conclusions on the issues relating to petitioners' tax liabilities. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
c. ↩
State, county, city taxes, residence
$127.88
Interest on res. - Spratlin - Harrington
751.96
Insurance
12.70
$892.54
a. ↩
VA Ins.
7 (at) $11.40 =
$ 79.80
4 (at) 17.32 =
69.28
$149.08
b. 11 (at) $18.13 ↩
d. Actual difference is $267.36↩
1. Refers to J. Sidney Lanier. ↩
2. Refers to Elizabeth Lanier. ↩
3. This item is composed of a $3,696.71 note secured by a second mortgage on property at 409 Lyle Avenue and a $3,692.67 note secured by a second mortgage on 407 Lyle Avenue. ↩
4. Law books and a boat. ↩
5. Dimmock Street property notes eliminated. ↩
6. Notes on law books and boat. ↩
7. This adjustment is not contested by petitioner.↩