HAROLD E. HARBIN AND GRACE HARBIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93250. Filed May 20, 1963

*J. B. Fisher* and *Edward W. Hiserman,* for the petitioners.
*John J. Larkin,* for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in the income tax of petitioners for the year 1957 in the amount of $23,409.11, and an addition to tax under section 6653(a) of the Internal Revenue Code of 1954 for negligence or intentional disregard of rules and regulations in the amount of $1,170.46.

Petitioners have conceded certain adjustments made by respondent for additional interest income and for depreciation. The only issues presented are whether respondent's determination of additional wagering income for 1957 was arbitrary, and whether petitioners are liable for an addition to tax under section 6653 (a).

FINDINGS OF FACT

Harold E. and Grace Harbin are husband and wife and reside in Charleston, W. Va. They filed a joint Federal income tax return for 1957 with the district director of internal revenue for the State of West Virginia. Grace Harbin is a party solely by reason of having filed a joint return. Accordingly, Harold E. Harbin will hereinafter be referred to as petitioner.

In his return for 1957 petitioner reported a small amount ($42.91) of net income from the operation of a restaurant, poolroom, and bar known as "The Jeep." He also reported under the heading "Other Income," income in the amount of $16,044.38, of which $1,344.38 was described on page 3 of the return as income from a partnership or joint venture and the balance in the amount of $14,700 was described as "Gains from Wagering in business." No explanation, details, or schedules are shown on the return as to the method used in arriving at this total amount of $14,700 in wagering income.

On November 4, 1955, the district director of internal revenue at Parkersburg, W. Va., wrote petitioner the following letter:

Mr. HAROLD E. HARBIN,
*1498 West Washington Street,*
*Charleston, West Virginia.*

DEAR MR. HARBIN: An internal revenue agent has submitted a report to this office to the effect that you are not maintaining sufficient records for the purpose of determining your correct liability for Federal income taxes. Each taxpayer is required by law to make a return of his true income. He must, therefore, maintain such accounting records as will enable him to do so.

Section 54 of the Internal Revenue Code provides in part as follows:

"RECORDS AND SPECIAL RETURNS

"(a) By Taxpayer.—Every person liable to any tax imposed by this chapter or for the collection thereof, shall keep such records, render under oath such statements, make such returns, and comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe.

"(b) To Determine Liability to Tax.—Whenever in the judgment of the Commissioner necessary he may require any person, by notice served upon him, to make a return, render under oath such statements, or keep such records, as the Commissioner deems sufficient to show whether or not such person is liable to tax under this chapter."

Section 145 of the Internal Revenue Code provides in part as follows:

"(a) Any person required under this chapter to pay any estimated tax or tax, or required by law or regulations made under authority thereof to

make a return, or declaration, keep any records, or supply any information, for, the purposes of the computation, assessment, or collection of any estimated tax or tax imposed by this chapter, who willfully fails to pay such estimated tax or tax, make such return, or declaration, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution."

This is an official notice to you to keep complete records from which your tax liability may be properly determined. Continuing failure to keep such records may subject you to the penalties provided by law. The records you are required to keep include records showing in detail each transaction engaged in by you, including the date thereof, the amount of each item of gross income received, and a description of the nature of the income so received. Detailed records should also be maintained of all payments made by you, including the date of each payment, the name of the payee, address of payee, and a description of the nature of each payment.

Section 29.54–1 of Regulations 111 provides in part as follows:

"The books or records required by this section shall be kept at all times available for inspection by internal-revenue officers, and shall be retained so long as the contents thereof may become material in the administration of any internal-revenue law."

Any questions which you may have as to compliance with the requirements set forth in this letter should be taken up with this office.

Very truly yours,

P. L. CHARLES,
*District Director of Internal Revenue.*

The original of this letter was served upon petitioner on December 28, 1955, by an agent of the Internal Revenue Service.

Petitioner's income tax liability for the years 1952 and 1953 was considered by this Court in Docket No. 66272 and a Memorandum Opinion (T.C. Memo. 1958–190) was filed therein on November 13, 1958. Decision was entered January 28, 1959, and no appeal was taken therefrom.

An investigation of petitioner's tax liability for the year 1957 was made by an internal revenue agent of many years' experience. Requests were made of petitioner for his books and records relating to his gambling activities on two or more occasions but none were ever produced. In the absence of such records respondent's agent canvassed the banks in and around Charleston for checking and savings accounts of petitioners and for safety deposit boxes. Only one small checking account was located. Courthouse and State records were examined for possible property owned or listed by either petitioner. Title to only one 1956 DeSoto automobile was discovered. The agent also examined the records of the Charleston Retail Credit Bureau for credit charges but none were found.

Respondent's agent computed petitioner's gross wagering income in 1957 on the basis of testimony given by petitioner in Docket No. 66272 that his net income in 1952 and 1953 was 8 percent of gross

income. He then determined that the average percentage of net income, after deduction of expenses but before deduction of wagering excise taxes, in 1952 and 1953, as shown by the Court's findings in Docket No. 66272, was 29 percent of gross income and applied this percentage to determine petitioner's net wagering income in 1957. The agent's computations are the same as those shown by the statement attached to the notice of deficiency filed as an exhibit to the petition herein.

Petitioner paid no wagering excise tax for 1957, and neither petitioner testified at the trial of the present proceedings.

Petitioner failed to maintain books and records from which his income from gambling could be ascertained.

Petitioner has not established that the deficiency determined by respondent for the taxable year 1957 was arbitrary.

The deficiency and additions to tax determined by respondent for the taxable year 1957 were neither arbitrary nor unreasonable.

OPINION

Neither petitioner appeared at the trial of this proceeding and no evidence was offered as to their business or wagering transactions. Petitioner seeks to avoid the tax effect of respondent's determination herein, as we understand his contention, solely on the ground that respondent's determination of the deficiency herein was arbitrary and is, therefore, entitled to no presumption of correctness, for the reason that it was based on "findings before the Tax Court of the United States in regard to prior years"; that in the absence of such a presumption there was no burden on petitioner to show the correct amount of tax, if any, owed by him; and that respondent has presented no evidence herein to support his finding of a deficiency. Respondent, on brief, agrees with the principles announced in *Helvering v. Taylor*, 293 U.S. 507; *Durkee v. Commissioner*, 162 F. 2d 184; *Gasper v. Commissioner*, 225 F. 2d 284; *Commissioner v. R. J. Reynolds Tobacco Co.*, 260 F. 2d 9 (C.A. 4, 1958) ; and *Welch v. Commissioner*, 297 F. 2d 309 (C.A. 4, 1961), cited by petitioner, to the effect that if respondent's determination was arbitrary and unreasonable then no presumption of correctness attaches to it and petitioner was not required to establish what amount of taxes, if any, he owes. Respondent contends, however, that the burden was on petitioner first to establish that respondent's determination was arbitrary and unreasonable, and that petitioner has not sustained that burden. We agree with respondent.

Section 446 of the Internal Revenue Code of 1954, relating to the General Rule for Methods of Accounting, provides as follows:

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

Thus, where a taxpayer keeps no books or records, or his records are inadequate, the Commissioner is authorized to compute income by whatever method will, in his opinion, clearly reflect the taxpayer's income. No particular method is required since circumstances will vary in individual cases.

In *Burka* v. *Commissioner*, 179 F. 2d 483, affirming a Memorandum Opinion of this Court, the Fourth Circuit held "The Commissioner was * * * at liberty to resort to the best procedure available under the circumstances in making his determinations * * *." In *Carroll F. Schroeder*, 40 T.C. 30 (1963), this Court recently said: "Where, as here, a taxpayer maintains no records, both the Commissioner and, in turn, this Court, have no other course than to reconstruct income in the most reasonable way possible." In *Campbell* v. *Guetersloh*, 287 F. 2d 878, 880 (C.A. 5, 1961) the court said: "There is no restriction on the method or theory by which the Commissioner tests his belief that unreported income exists. * * * We know of no requirement anywhere laid down, that he must follow any set pattern." See also *Kenney* v. *Commissioner*, 111 F. 2d 374, 375 (C.A. 5, 1940); *Harris* v. *Commissioner*, 174 F. 2d 70 (C.A. 4, 1949); *Davis* v. *United States*, 226 F. 2d 331, 336 (C.A. 6, 1955).

It is recognized that the "burden to adopt a method that will clearly reflect the income is on the Government equally as well as on the taxpayer." *Bradstreet Co.* v. *Commissioner*, 65 F. 2d 943 (C.A. 1, 1933). This does not mean, however, that where a taxpayer has deliberately and willfully failed and refused to keep and maintain any books or records of his business transactions, the Commissioner, in making his determination of a deficiency, is required to compute the net income of the taxpayer with mathematical exactness. "Under such circumstances, approximation in the calculation of net income is justified." *Harris* v. *Commissioner, supra.* To hold otherwise would, as the Supreme Court stated in *United States* v. *Johnson*, 319 U.S. 503, "be tantamount to holding that skilful concealment is an invincible barrier to proof." Moreover, as was stated by the Court of Appeals for the District of Columbia in *O'Laughlin* v. *Helvering*, 81 F. 2d 269 (1935):

Taxation is not only practical—it is vital. The obligation of good faith and fair dealing in carrying out its provisions is reciprocal and, as the government should never be overreaching or tyrannical, neither should a taxpayer be permitted to escape payment by the concealment of material facts.

The greater part of petitioner's taxable income for the year 1957 was derived from gambling. Although his income tax liability de-

rived from gambling for the years 1952 and 1953 was the subject of a prior proceeding in this Court and he was officially notified in 1955 that he should keep, maintain, and make available for inspection by authorized internal revenue officers or employees adequate books and records from which his income from gambling could be ascertained, as required by section 54 of the Internal Revenue Code of 1939 and section 29.54-1 of Regulations 111 (sec. 6001, I.R.C. 1954, and sec. 1.6001, Income Tax Regs.), petitioner failed to keep such books and records for 1957, or, if he did so, failed and refused to make them available for inspection by respondent's agents.

An extensive investigation by respondent's agents of bank records, public records, and records of credit bureaus, failed to reveal any assets or transactions from which petitioner's income could be ascertained or computed by use of more customary methods, such as the so-called net worth or bank deposit methods. Nor had petitioner paid any wagering excise taxes in 1957 from which his gambling income might be ascertained as was done in Docket No. 66272 for the years 1952 and 1953. Accordingly, since petitioner had reported "gains from wagering in business" in 1957 in the amount of $14,700, without any explanation, details, or supporting schedules, respondent resorted to the only means which appeared reasonable to him for the purpose of verifying or ascertaining petitioner's net taxable income from wagering for the year 1957.

At the trial of the proceedings in Docket No. 66272, wherein his principal income had also been derived from wagering, petitioner had testified that his net income was 8 percent of his gross income. Applying this percentage to his reported gain from wagering in the amount of $14,700, respondent's agent computed petitioner's gross income from wagering in 1957 as $183,750.

In its opinion filed November 13, 1958, in Docket No. 66272 (T.C. Memo 1958-190) this Court found that petitioner had gross income from the operation of his gambling business in the amounts of $119,-991.47 in 1952, and $97,742.76 in 1953, and that he sustained net gambling losses and deductible expenses, exclusive of excise taxes paid, in the amounts of $87,594.37 in 1952 and $67,442.50 in 1953. The Court also found that wagering excise taxes in the amounts of $11,998.43 and $9,774.28 were paid by petitioner in 1952 and 1953, respectively, and that his net income was $20,398.67 for 1952 and $20,525.98 for 1953. From these figures respondent's agent determined that in 1952 petitioner's net income from wagering, after deduction of expenses but before deduction of excise taxes ($119,991.47−$87,594.37=$32,397.10) was 26.99 percent of his gross income from wagering. He further determined that in 1953, petitioner's net income from wagering, after deduction of expenses but before deduction of excise taxes ($97,742.76−$67,442.50=$30,300.26), was 31 percent of his gross

income from wagering. Applying the average of these percentages (29 percent) to the amount of gross income determined as having been received by petitioner during the year 1957, it was determined that petitioner's net wagering income was $53,287.50. To this amount there was added $6,650, explained in the statement attached to the deficiency notice: "In the absence of any records, it is determined that in arriving at the net income reported, there was claimed a deduction for payments not allowable under any provision of the Internal Revenue Code of 1954, in the amount of $6,650.00." Petitioner's "Corrected Income from Wagering" was computed to be $59,937.50. No evidence was offered and no discussion has been made by petitioner respecting the item of $6,650 nonallowable payments."

In view of petitioner's failure to keep any records of his wagering activities, his failure to appear at the trial or to offer any evidence from which his net income might more accurately be determined, and the ineffectivenes of the efforts of respondent's agent to discover other facts which might enable him to compute petitioner's net income by other recognized methods, we think the method used by respondent was not only justified and appropriate but was reasonable and was not, as petitioner contends but has wholly failed to establish, arbitrary. Cf. *Anthony Delsanter*, 28 T.C. 845, affd. 267 F. 2d 39 (C.A. 6, 1959). Accordingly, respondent's determination both with respect to the deficiency and the addition to tax is sustained.

*Decision will be entered for the respondent.*