ANDREW GERARDO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gerardo v. Commissioner
Docket No. 7035-72.
United States Tax Court
T.C. Memo 1975-341; 1975 Tax Ct. Memo LEXIS 33; 34 T.C.M. (CCH) 1480; T.C.M. (RIA) 750341; November 13, 1975, Filed Edwin Fradkin and Harvey R. Zeller, for the petitioner. Robert N. Ginsburg, for the *34 respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in the Federal income tax of petitioner and additions to tax as follows: Addition to Tax Year
Deficiency
Sec. 6653 (b) [1]
1966
$807,386.80
$403,693.40
1967
91,862.83
45,931.41
We must decide whether petitioner failed to report, on the Federal income tax returns filed for the years in issue, income realized on the operation of a numbers lottery; and, if so, whether part of any resulting underpayment of tax was due to fraud. FINDINGS OF FACT Certain facts have been stipulated by the parties and are so found. The petitioner, Andrew Gerardo, was a resident of Newark, New Jersey, when the petition herein was filed. He filed timely Federal income tax returns for the years 1966 and 1967 with the District Director of Internal Revenue, Newark, New Jersey. During the years in issue petitioner was the principal stockholder and operating officer of two related corporations engaged in excavation and trucking activities. *35 He received and reported salaries of $8,600 and $24,600 in 1966 and 1967, respectively. Petitioner dealt almost exclusively in cash during the years in issue. He did not maintain a checking account and any checks received by him were immediately cashed or endorsed by a third party and cashed. On June 25, 1968, the Grand Jury for Essex County, New Jersey, returned an indictment charging the petitioner and 18 others with conspiracy to operate a lottery in violation of the criminal laws of the State of New Jersey[2] between August 5, 1966 and February 3, 1967, in Newark, New Jersey. In the indictment it was alleged that petitioner took part in conversations concerning gambling and lottery activities, aided in transporting cartons containing gambling parapheralia and currency, and delivered large amounts of currency to other members of the group. Petitioner was convicted by a jury verdict on April 28, 1969. The judgment was affirmed on appeal and certiorari to the United States Supreme Court was denied. Prior to petitioner's indictment, respondent conducted an investigation of illegal gambling activities in northern Newark. *36 A large portion of the investigation was carried on by an agent of respondent who, posing as a bettor, gained the confidence of those who conducted illegal gambling activities in northern Newark and thus was able to learn something about the inner workings of their organization. In the course of his undercover surveillance, respondent's agent frequented a certain dining establishment known as the Ben Thomas Luncheonette, a frequent meeting place of several of the conspirators. There respondent's agent placed bets regularly, with Joseph Cipriano, a convicted co-conspirator who accepted and recorded bets for the organization. [3]
Respondent's agent gained the confidence of Cipriano who freely discussed the operation with the agent and told him that petitioner was third in the chain of the organization's command. Cipriano further informed the agent that the organization was extremely prompt in paying winning bettors, that petitioner was responsible in this capacity and could be consulted should a problem arise. Petitioner was a regular visitor to the luncheonette and was observed there by respondent's agent on at least thirteen *37 occasions. Respondent's agent placed bets with Cipriano in petitioner's presence. Petitioner was frequently observed as party to discussions concerning wagering operations. On one occasion respondent's agent overheard petitioner inform the alleged chief of the operation that "the heat was on," and "they (the authorities) are going to give it their raid treatment." On February 2 and 3, 1967, Special Agents of the Intelligence Division of the Internal Revenue Service obtained search warrants and conducted searches of five residences allegedly used as lottery "offices" or meeting places of the conspirators. A number of automobiles were also searched at this time. During the raids, respondent's agents seized gambling paraphernalia in the form of betting slips comprising the recorded daily tallies of each of the group's bet recorders for three days' operation. An analysis of the seized slips revealed a correlation showing that slips seized from the several different locations were part of a single wagering operation. By projecting the amount reflected in the three days' slips over the number of months of the lottery's operation, respondent determined that the lottery generated gross *38 wagers of $3,891,478.50 from April 4, 1966 to December 31, 1966 and $465,647.00 from January 1, 1967 to February 3, 1967. Respondent then determined that 30 percent was the probable percentage of net profit yielded by a wagering operation of that size. Applying this percentage to gross wagers, respondent computed that petitioner realized profits from the lottery in the amount of $1,167,443.55 during 1966 and $139,694.10 during 1967 and determined a deficiency in a statutory notice mailed June 23, 1972. OPINION Respondent asserts that petitioner realized income from a lottery operation, which he failed to report for Federal income tax purposes in a willful attempt to evade tax during the years in issue. Respondent has the burden of demonstrating fraud by clear and convincing evidence. Sec. 7454(a); Frank Imburgia,22 T.C. 1002 (1954). The question of fraud is to be ascertained from the entire record, by surveyance of the taxpayer's entire course of conduct. Fiorella v. Commissioner,361 F.2d 326 (5th Cir. 1966), affg. a Memorandum Opinion of this Court; Luerana Pigman,31 T.C. 356 (1958); M. Rea Gano,19 B.T.A. 518 (1930). *39 Respondent need only prove that a portion of the underpayment was fraudulent. Mauch v. Commissioner,113 F.2d 555 (3d Cir. 1940) affg. 35 B.T.A. 617 (1937); Arlette Coat Co.,14 T.C. 751 (1950). Proof of fraudulent intent can seldom be established directly; often it must depend to some extent on circumstantial evidence and other inferences properly drawn from the record. Where the taxpayer's activities remained clandestine, with transactions unrecorded and records destroyed, these inferences are particularly crucial. Fiorella v. Commissioner,supra;Luerana Pigman,supra;M. Rea Gano,supra.
Respondent endeavors to link petitioner with the lottery by demonstrating the recularity of his asso3iation with other members of the conspiracy group. Respondent emphasizes the fact that petitioner had knowledge of certain group member's involvement in illegal activities; he regularly took part in discussions concerning local gambling activity. On one occasion petitioner informed the group's leader that "the heat was on." Moreover, petitioner was tried and convicted of conspiring *40 to violate state criminal wagering statutes together with other members of the group. [4]
In addition, respondent urges us to accept the out of court statements of Joseph Cipriano. [5] This evidence defines with particularity petitioner's position and function within the group as a key figure responsible for coordinating a huge organization composed of numerous bet writers, runners, and payoff men. Petitioner contends that the only evidence tending to connect him with the lottery was hearsay which he claims was not admissible; and that therefore respondent has failed to sustain his burden of proof. According to Rule 143, Tax Court Rules of Practice and Procedure, the *41 rules of evidence to be applied in tax court trials are the same as those applicable in nonjury proceedings before the United States District Court for the District of Columbia. [6] The Federal Rules of Civil Procedure control in such a trial, Rule 43(a)[7] providing rules for admissibility of evidence. This rule favors admission of relevant and reliable evidence and is not to be narrowly construed so as to exclude trustworthy *42 evidence. Hicks Co.,56 T.C. 982 (1971). At trial, respondent's agent testified that he gained the confidence of Joseph Cipriano, one of the group's bet recorders, who on several occasions identified petitioner as third in command of the organization and as an active participant who was solely responsible for payment of winning bettors. Petitioner asserts that the testimony of respondent's agent regarding the contents of his conversations with Cipriano is inadmissible hearsay since it consists of statements made out of court and is submitted by respondent to prove the truth of the matters set forth therein. Respondent answers that the statements made by Cipriano to respondent's agent were statements made by a co-conspirator in furtherance of the conspiracy and, therefore fall within the well established exception to the hearsay rule allowing admission of such statements. In order to satisfy this exception, two conditions must be met: (1) the declaration must have been made while the conspiracy was continuing; and (2) the declaration must have constituted a step in furtherance of the venture. See McCormick, Evidence, sec. 267, p. 639 (2d ed). Since Cipriano's *43 statements were clearly made while the conspiracy was in progress, the question remains whether he made the statements to respondent's agent in furtherance of the conspiracy. We find that he did. Lottery operations are dependent on the small regular bettor. Respondent's agent became such a bettor. Cipriano's statements advanced the goals of the conspiracy by instilling confidence in respondent's agent as to the operation's business-like efficiency, its chain of command, and departmentalized structure so that he would continue to place his bets with the organization. In view of the circumstances, we find that the statements were made to further the interests of the conspiracy and are admissible in evidence as an exception to the hearsay rule. [8]
After careful consideration, we find the first hand observations of respondent's agent sufficient *44 to convince us that petitioner was linked with the lottery operation. Our finding is confirmed by the out of court statements of Cipriano, which we deem reliable and trustworthy. Once established that petitioner was party to the operation, common logic forbids us from reaching any conclusion other than that he participated for monetary profit. During the years in issue petitioner dealt largely in cash and reported no income at all from the gambling enterprise. Income from such a source might easily be concealed among the cash dealings and intentional, systematic destruction of records which are characteristic of illegal lottery activities. This leads us to conclude that petitioner realized substantial amounts of income from the operation which he failed to report. This combined with his past criminal behavior indicates an intention to operate outside the law, conduct having a likely effect to mislead and conceal. Evidence of such conduct is indicative of fraudulent intent. Spies v. United States,317 U.S. 492 (1943); Fiorella v. Commissioner,361 F.2d 326 (5th Cir. 1966), affg. a Memorandum Opinion of this Court; William H. Parsons,43 T.C. 378 (1964); *45 Nathan Bilsky,31 T.C. 35 (1958). The evidence supporting a conclusion to the contrary is limited to self-serving statements of petitioner which, in view of his character, background, and demeanor on cross examination, we find unworthy of credence. Arlette Coat Co.,14 T.C. 751 (1950). On the basis of the entire record and our evaluation of petitioner's credibility, there is clear and convincing evidence that petitioner received and deliberately failed to report substantial amounts of income in both of the years in issue. Receipts of such magnitude from a source so unsavory negate any inference that they were innocently omitted. Estate of Joseph Nitto,13 T.C. 858 (1949). We conclude that fraud has been proven and that the additions to tax provided in section 6653(b) [9] are therefore applicable. *46 Having concluded that petitioner willfully attempted to evade income tax by filing fraudulent returns, the issuance of statutory notice in this case was timely. Sec. 6501(c). [10]
We now consider petitioner's objection regarding the method used by respondent in determining the amount of income realized from the lottery operation. Respondent need not prove the precise amount of income understated when proving fraud. We are free to adjust the deficiencies which respondent has determined without prejudicing our holding on the issue of fraud. United States v. Chapman,168 F.2d 997 (7th Cir. 1948), cert. denied 335 U.S. 853 (1948); Smith v. United States,236 F.2d 260 (8th Cir. 1956), cert. denied 352 U.S. 909 (1956). Owing to petitioner's failure to maintain records and his custom of exclusive cash dealing, respondent *47 found that it was impossible to determine petitioner's income by the net worth, bank deposit, or other familiar methods of income reconstruction. He therefore utilized the lottery slips of three days' operation to determine the average amount of petitioner's daily gross wagering receipts. This amount was then projected over the period the lottery was known to have been operating. Taking into account various expenses, commissions, and payouts for winning bets, respondent determined that the operation's net profit would range from 15 to 30 percent of gross wagering receipts. Assuming a 30 percent profit ratio and applying it against total gross wagering receipts, respondent determined petitioner's taxable income from the lottery operation was $1,167,443.55 for 1966 and $139,694.10 for 1967. Respondent's determination is presumed to be correct. Welch v. Helvering,290 U.S. 111 (1933). Petitioner claims that respondent's determination was arbitrary, unreasonable, and excessive; and that it therefore does not carry the customary presumption of correctness. The burden is upon petitioner to demonstrate that the determination is arbitrary and unreasonable in order to *48 dispel the presumption of correctness. Harold E. Harbin,40 T.C. 373 (1963). It has been established that a general method of computation is not arbitrary where, as in this case, concealment or destruction of records by petitioner impedes reconstruction of income in the usual fashion. United States v. Johnson,319 U.S. 503 (1943); Mitchell v. Commissioner,416 F.2d 101 (7th Cir. 1969), affg. a Memorandum Opinion of this Court, cert. denied 396 U.S. 1060 (1970); Fiorella v. Commissioner,supra;HaroldE. Harbin,supra.
In view of petitioner's failure to carry his burden of proving the determination arbitrary, and his failure to introduce evidence disputing its correctness, we would not feel entirely unjustified in sustaining the determination in whole. We are convinced, however, that there is sufficient indication in the record that respondent's determination was probably excessive for both years and have therefore redetermined petitioner's correct income within the margin permitted by the evidence. [11]
*49 Petitioner dealt almost exclusively in cash, preventing reconstruction of income by reference to net worth or bank deposit increase. We have of necessity relied on the same general method of computation used by respondent, in the absence of any other method adequately supported by the evidence in this case. Harold E. Harbin,supra;Mitchell v. Commissioner,supra.
Respondent determined the amount of income petitioner received from the gambling operation by assuming that a lottery operator would realize net profits equal to 30 percent of gross wagering receipts. The 30 percent figure was derived from respondent's observation of this lottery combined with expert opinion which established that, in general, lottery profits may vary from 15 to 30 percent of gross wagering receipts. Taking all factors into consideration, however, we have concluded that the 30 percent figure used by respondent does not provide adequate allowance for the expenses involved in operating this lottery, and that a 20 percent profit margin more fairly approximates the correct amount of profit return received by petitioner in this case. Therefore in determining *50 petitioner's net taxable income from wagering activities by the method of computation described above under Rule 155, the 20 percent figure should be used, rather than the 30 percent figure used by respondent. Mitchell v. Commissioner,supra;Fiorella v. Commissioner,supra.
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. N.J. Stat. 2A:121-3 and N.J. Stat. 2A:112-3↩.
3. In all, the agent placed a total of 68 bets.↩
4. Petitioner was convicted of a felony violation of New Jersey law and has offered this Court no mitigating explanation. We are therefore inclined to give the conviction substantial effect. See Rule 803(22), Federal Rules of Evidence↩, and accompanying Notes of the Advisory Committee; see also McCormick, Evidence, sec. 318, p. 738 (2d ed). In any event the conviction has severely impugned the value of his testimony.
5. At the time of trial, Joseph Cipriano was deceased.↩
6. The trial of this case took place on May 8, 1974, prior to the effective date of the Federal Rules of Evidence. ↩
7. Rule 43(a), FRCP, provides: (a) Form and Admissibility. In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs * * *↩
8. There would be no question as to the admissibility of this evidence under the new rules. Rule 801(d)(2)(E) of the Federal Rules of Evidence↩, effective July 1, 1975, avoids classifying co-conspirator statements as hearsay, and as such, they are entirely exempted from the operation of the hearsay rule.
9. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud.--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.↩
10. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (c) Exceptions.-- (1) False Return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.↩
11. In affirming our findings in a similar case, the Court of Appeals for the Seventh Circuit stated: We have carefully examined the entire record of the Tax Court proceedings. This examination convinces us that the Tax Court would have been justified in relying on the presumption of correctness which attaches to the Commissioner's determination. While it did sustain the Commissioner's method of arriving at appellants' gross income, it determined that, in fairness, certain credits should be allowed the taxpayers over and above those granted by the Commissioner. The evidence before the Tax Court clearly indicated that appellants' tax returns for the years in question included only a small portion of their income from gambling. Therefore, to adopt appellants' theory would be tantamount to holding that skillful concealment of income by failure to keep records and destruction of the original documents from which income could be reconstructed would be an invincible barrier to proof. * * *
It is well settled that the Tax Court may properly reevaluate the evidence and reach its own findings, even though the record may be such that the result will be only an approximation based on the best records available, particularly where, as here, the taxpayer kept no records as the law required. * * * Moreover, in arriving at the tax deficiency, the Tax Court, as the trier of the facts, is warranted in bearing heavily against the taxpayer, whose own failure to keep records has created the dilemma. [Mitchell v. Commissioner,416 F.2d 101, 102 (7th Cir. 1969), affg. a Memorandum Opinion of this Court, cert. denied 396 U.S. 1060↩ (1970)].