DOROTHY A. ARMSTRONG, Transferee, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentArmstrong v. CommissionerDocket No. 7056-73United States Tax CourtT.C. Memo 1977-30; 1977 Tax Ct. Memo LEXIS 408; 36 T.C.M. (CCH) 137; T.C.M. (RIA) 770030; February 7, 1977, Filed *408 Petitioner's transferor sold all of its assets in a sec.337 sale. Held, The portion of the sales price allocable to the sec. 1245 assets is less than the adjusted basis thereof. Hence no depreciation is required to be recaptured pursuant to sec. 1245. Ben Weisel and Vinson Brice, for the petitioner.G. W. McDonald, for the respondent. STERRETTMEMORANDUM OPINION STERRETT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year ended November 30, 1969 in the amount of $101,855.14. This deficiency was determined against petitioner as transferee of the assets of California Bench Company under section 6901, I.R.C., 1954. Petitioner has conceded that she is the transferee of the assets of California Bench Company. Due to concessions by petitioner, the sole issue for decision is the determination of the amount of depreciation required to be recaptured by the California Bench Company pursuant to section 1245 upon the sale of its assets. The resolution of this issue rests upon proper allocation of the purchase price among the various assets sold. All of the facts have been stipulated and are so found. The stipulation of facts, together with *409 the exhibits attached thereto, are incorporated herein by this reference. Petitioner, Dorothy A. Armstrong, resided in Long Beach, California at the time she filed her petition herein. The deficiency in the instant case stems from petitioner's liability as transferee of the assets of California Bench Company (hereinafter CBC). CBC filed its corporate income tax return for its taxable year ended November 30, 1969 with the district director of internal revenue, Los Angeles, California. Prior to 1966 CBC, owned by the Armstrong family, and Bench Ad Company, owned by Bruce Guess, were both engaged in the bus-stop bench advertising business in California. On September 30, 1966 Bruce Guess sold his stock in Bench Ad Company to CBC for $408,000. On the same day CBC dissolved Bench Ad Company and allocated the stock purchase price to the assets received in liquidation. In so doing, CBC allocated $308,400 to used benches and utilized this amount in computing its depreciation deduction with respect to the benches on its return for its 1967 taxable year. The district conference report 1, dated January 21, 1970, relating to that taxable year shows among other proposed adjustments, the following: *410 (a) Depreciation - benches ($15,000.00 ) Based upon additional information submitted in conference it was determined that the 4000 used benches acquired from Bench Ad Co., had an average fair market value of $40.00 each. Allowable depreciation for the year ended November 30, 1967 is as follows: 4000 benches $40.00 EA.= $160,000.00Depreciation = $160,000.00 X 15% =$24,000.00Depreciation per return =46,260.00Adjustment as corrected in conference$22,260.00Adjustment per Revenue Agent's Report37,260.00Decrease to proposed adjustment($15,000.00)The balance of the price paid to Bench Ad Co., or $148,400, was the price paid for the franchises and, thus, the value of the locations of the benches. In 1968 both Lucille Armstrong, president and 64.6 percent stockholder of CBC, and Robert Armstrong, secretary and 33.2 percent stockholder of CBC, died leaving CBC without adequate management. 2 Subsequently, Bruce Guess was hired as president of CBC and, thereafter, efforts were made to sell the stock or assets of CBC. On March 27, 1969, operating assets having an adjusted basis per return of $347,100.99, were *411 sold to ACME Bench Ad Company for $510,000. 3Among the assets sold were 14, 753 benches having a total adjusted basis of $136,585.99. Each bench is covered by a city permit for a specific location. These permits are renewable annually upon payment of a fee. Post-1961 depreciation claimed on the depreciable assets sold totaled $198,343.56. The contract for sale contained no allocation of the purchase price among the various assets sold. The following is a schedule (received in evidence as Exhibit 10-J) of the unadjusted basis, depreciation before January 1, 1962 and after December 31, 1961, total depreciation, and the adjusted basis of the assets sold by CBC to ACME Bench Ad Company as they appeared on the books and records of CBC. DepreciationDateUnadjustedBeforeAfterTotalAdjustedAcquiredBasis1/1/6212/31/61DepreciationBasisOffice Eq.$ 8,534.51$ 3,818.80$ 3,093.46$ 6,912.26$ 1,622.25Furn & F.13,740.532,087.557,649.229,736.774,003.76Autos & Tr.11,946.2788.009,596.209,684.202,262.07Subtotals34,221.315,994.3520,338.8826,333.237,888.08New Benches: 11/30/5521,385.5019,423.031,796.7121,219.74165.7611/30/5621,173.5018,224.072,700.3120,924.38249.1211/30/571 5,926.5012,757.402,901.4215,658.82267.6811/30/586,633.004,747.501,728.646,476.14156.8611/30/597,50 5.004,457.322,790.267,247.58257.4211/30/606,551.202,750.693,479.506,230.19321.0111/30/6112,692.002,173.519,630.0411,803.55888.4505/31/6219,367.4417,569.1517,569.151,798.2906/6319,171.0016,695.4016,695.402,475.6006/645,700.004,706.114,706.11993.8911/645,852.004,761.944,761.941,090.0605 /659,101.006,763.946,763.942,337.0611/654,579.003,322.253,322.251,256.7511/663,496.002,125.5 72,125.571,370.4311/673,724.001,638.561,638.562,085.4411/68950.00950.00Subtotals163,807.1464,533.5282,609.80147,143.3216,663.82Unexplained error34.09Per books and per return147,109.23Used Benches: 11/30/601,980.001,109.38870.621,980.00None11/30/612,000.00541.671,458.332,000.00None06/0 1/6245,000.0045,000.0045,000.00None11/30/66160,000.0048,000.0048,000.00112,000.00Subtotals208,980.001,651.0595,328.9596,980.00112,000.00"Intangibles": 06/01/6217,000.00("Purchased Mun. Franchise" per17,00.00books)11/30/66148,400.00("Goodwill" per books)148,400.00Subtotals165,400.00165,400.00Cash Equivalents ("Other assets" per gain schedule)Deposits1,273.00Note rec.-3,295.07Rent.Bill.Rec.29,500.00Pdp. Mun. Lic.17,107.00Pdp. Int.283.00Subtotal51,458.07Less Equip.Pur. Cont.2,246.5649,212.0049,212.00Grand totals: $621.620.45$72,178.92$198,277.63$270,457.20$351,163.90*412 On its return for its fiscal year 1968 CBC reported the sale as follows: CALIFORNIA BENCH COMPANYYear Ended November 30, 1969 GrossCost orDepreciationCapitalDateDateSalesOtherPrior toGainsAcquiredSoldPriceBasis1-1-62Part 1Used Office6-1-623-27-691,672.628,534.513,818.80EquipmentFurniture &Pre 683-27-694,042.1713,740.532,087.55EquipmentAutos & TrucksPre 683-27-692,369.5411,946.2788.00Rental BenchesPre 683-27-69114,295.70208,980.001,551.03Rental BenchesPre 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,004.97163,807.1464,533.52Other AssetsPre 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,115.0062,115.00GoodwillPre 683-27-69308,500.00148,400.00Totals510,000.00617,523.4572,078.90DepreciationCapitalAfterAdjustedTotalOrdinaryOtherGains12-31-61BasisGainGainGainPart 1Used Office3,093.46*1,622.2550.3750.7EquipmentFurniture &7,649.224,003.7638.4138.41EquipmentAutos & Trucks9,596.202,262.07107.47107.47Rental Benches95,428.97*112,000.002,295.702,295.70Rental Benches82,575.7116,697.91307.06307.06Other Assets62,115.00-o-Goodwill148,400.00160,100.00160,100.00Totals198,343.56347,100.99162,899.01452.94162,446.07 *Straight Line Depreciation Respondent in his notice of deficiency made the following determination. (a) It is determined *413 that the sale of the operating assets to Acme Bench Ad Company in March of 1969 resulted in a taxable gain of $198,343.56 in lieu of the $452.94 reported. Therefore taxable income for the taxable year ended November 30, 1969 is increased by $197,890.62, computed as follows: SellingPost 1961AdjustedSec. 1245CapitalPriceDepreciationBasisGainGain or(Loss)Depreciable$407,885.00$198,343.56$136,585.99$198,343.56$72,955.45assetsIntangibles40,000.00148,400.00(108,400.00)Other assets62,115.0062,115.00Totals$510,000.00$198,343.56$347,100.99$198,343.56($ 35,444.55)Amount452.94nonereportedIncrease or$197,890.62Nonedecrease totaxable incomeCBC sold its assets pursuant to section 337 which provides, with certain exceptions, that no gain or loss is recognized on such disposition of assets. One exception is section 1245 which overrides the provision of section 337. Franklin Clayton, 52 T.C. 911 (1969). The instant controversy has its genesis in the application of section 1245 to the aforenoted sale. Section 1245, in pertinent part, provides: SEC. 1245. GAIN FROM DISPOSITIONS OF CERTAIN DEPRECIABLE PROPERTY. (a) General Rule.-- (1) Ordinary income. -- Except as otherwise provided in this section, *414 if section 1245 property is disposed of during a taxable year beginning after December 31, 1962, the amount by which the lower of-- (A) the recomputed basis of the property, or (B) (i) in the case of a sale, exchange, or involuntary conversion, the amount realized, or (ii) in the case of any other disposition, the fair market value of such property, exceeds the adjusted basis of such property shall be treated as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. Such gain shall be recognized notwithstanding any other provision of this subtitle. As applied to the facts herein, there is no dispute with respect to the adjusted basis, or the recomputed basis of the various assets sold. The sole question to be answered is the amount realized for the various items of section 1245 assets sold. This in turn depends upon the proper allocation of the purchase price between the section 1245 and non-section 1245 assets sold. The regulations 4*416 *417 promulgated with respect to section 1245 provide that, in the case of a sale of both section 1245 property and non-section 1245 property, the amount realized shall be allocated between the *415 section 1245 property and non-section 1245 property in proportion to their respective fair market values. The parties now agree that $49,212 of the sales price, rather than $62,115 shown on the return and in the notice of deficiency, is properly allocable to the "other assets" leaving $460,788 to be allocated between the section 1245 assets, namely the tangible property, and the non-section 1245 assets, to wit the intangibles. Respondent asserts that petitioner has failed to sustain her burden of proving that CBC possessed saleable intangibles other than ordinary customer goodwill of $40,000. 5 He further contends that petitioner has failed to establish the value of the tangible assets sold. We note here that we find his complaints with respect to the confused state of petitioner's exhibits to be fair comment. Respondent therefore urges that we sustain his determination that $40,000 of the sales price is allocable to goodwill with the remaining amount at issue being allocable to the tangible assets. Petitioner's argument is twofold. First she contends *418 that, upon proving respondent's determination to have no rational foundation and to be contrary to the governing statute, a taxpayer is relieved of the burden of proving the correct amount of tax he or she may owe, and that it is incumbent upon us to determine the correct tax owing without regard to the presumption of correctness to which respondent's determination is normally entitled. Petitioner further argues that respondent's determination is manifestly erroneous in that the section 1245 gain determined by respondent exceeds the total gain on the sale. This she maintains is in contravention of the mandate of section 1245 which effectively limits the amount of section 1245 income recognized upon a sale of an item of section 1245 property to the lesser of the total gain on such sale or the difference between the recomputed basis and the adjusted basis of such item.Hence, petitioner concludes that she no longer bears the burden of proof in the instant case. Petitioner has fairly stated the legal principle. See Harold E. Harbin, 40 T.C. 373 (1963). However we disagree that respondent's determination is arbitrary for the reason advanced by petitioner.Pursuant to section 1245(a)(1)*419 and the pertinent regulations the amount of ordinary income to be recognized on the sale of an item of section 1245 property cannot exceed the gain on the sale of that item. Further, where each of the assets sold (section 1245 assets or not) results in the realization of gain, it is clear that the amount of income recognized under section 1245 cannot exceed the total gain resulting from the sale of all the assets. However, in a group sale of assets resulting in gain on some or all of the section 1245 assets and a loss on other assets (whether or not they are section 1245 property), the statute nowhere dictates that the gain recognized pursuant thereto cannot exceed the total gain on the sale. In fact, it is obvious that, even should the vendor sustain a loss on the entire transaction, ordinary income must be recognized on the sale of the section 1245 items that result in the realization of gain (provided that the recomputed basis of the item exceeds its adjusted basis).Turning to the notice of deficiency it is apparent that respondent's determination does not contravence the language of section 1245. In computing the gain recognized thereunder he treated all the depreciable assets *420 as one item of section 1245 property, 6 allocated a portion of the purchase price to that item to determine the amount realized therefor, and determined the amount of ordinary income to be recaptured pursuant to the terms of section 1245. While such amount exceeds the total gain realized on the sale, this is a consequence of respondent's determination that the intangibles were sold at a loss rather than from an erroneous application of section 1245. Hence the burden of proof remains on petitioner. Petitioner's substantive argument entails a twotiered approach to support her position that the sale by CBC resulted in no gain and therefore no ordinary income from the sale of the section 1245 property. The first level incorporates the theory of a subtraction formula. Petitioner begins with the various cost figures for the benches shown on the books of CBC to which she applies a 65.48 percent reduction for wear, tear and obsolescence. *421 The result she maintains is both the reproduction cost new less depreciation and the fair market value of the benches sold. Further, petitioner argues that the adjusted basis of the other section 1245 property is equal to its fair market value. Having thus calculated the fair market value of the section 1245 property she subtracts that figure from the portion of the purchase price to be allocated to arrive at the amount realized for intangible assets. The various calculations proffered by petitioner and discussed infra are set forth below. Based onBased onExhibit 10-JExhibit 8-HCost per bench$ 25.27$ 19.00Less depreciation- 16.55- 12.44FMV per bench$ 8.72$ 6.56FMV for 14, 753 benches$128,646.16$ 96,779.68FMV of other 1245 property7,888.087,888.08FMV of all sec. 1245 property$136,534.24$104,667.76Amount to be allocated460,788.00460,788.00FMV of intangibles324,253.76356,120.24Petitioner's second level encompasses the following allocation of the $460,788 between the tangible and intangible assets: Fair MarketAllocatedItemValuePercentSales PriceGoodwill (from the statutory notice)$ 40,0005.01$ 23,085Right to renew permits, licenses, etc.$37.10 X 14, 753547,33668.50315,640Tangible personal property: Misc. depreciables, furniture,equipment, autos, etc.Adjusted basis7,888.994,562Benches: $40.00 X 65.48%(26.19)$13.81 per bench X 14, 753 benches =203,73925.50117,501$798,963100.00$460,788Petitioner, *422 in arriving at the above figures, used for the fair market values of the benches and rights to renew the values placed thereon in the district conference report noted in our findings of fact. First, we reject the subtraction method proffered by petitioner. Such method was based on what appears to us to be an artificially based reproduction cost for all the benches. The $19 figure was determined by reference to the cost of 50 benches acquired by CBC in 1968. Manifestly, petitioner's conclusion that the reproduction cost new of each of the 14, 753 benches was $19 is tenuous in light of the fact that no evidence appears in the record to indicate that the 50 benches were comparable to the others sold. We also find the $25.27 figure advanced by petitioner to be unacceptable as the reproduction cost new of each bench sold. This figure is based upon the purported original cost of the benches to CBC. Absent evidence that cost of such benches remained static from the time they were acquired to the time they were sold, the connecting link between such cost and reproduction cost new is questionable at best. Moreover, petitioner's calculations fail to account for obsolescence and wear *423 and tear. Although petitioner applied a 65.48 percent depreciation factor to the purported reproduction cost new, such figure was based upon the total depreciation taken on the benches by CBC.Petitioner did not offer any evidence, pertaining to the reasonableness of such figures and the effect of wear and tear on such benches. Merely because they appear on CBC's returns, some or all of which may or may not have been audited by respondent, does not render them correct. The fact of the matter is that no evidence was presented that would relate the book figures utilized by petitioner to the true economic value of the benches. See BASF Wyandotte Corporation v. Commissioner, 532 F. 2d 530 (6th Cir. 1976), affg. 62 T.C. 704 (1974). We also reject petitioner's fair market analyses. The computations contained therein rested upon the district conference report. Such report reflects no more than a settlement of a controversy contested both as to the underlying liability and amount. As such it is inadmissable to establish as fact that the values contained therein are actual values of the assets at issue.Rule 143(a), Tax Court Rules of Practice and Procedure; Rule 408 of Federal Rules of Civil Procedure. *424 Notwithstanding the foregoing, we think that respondent's allocations are erroneous. It cannot be gainsaid that the great majority of the $460,788 to be allocated was paid for the benches and the concomitant permit rights. Further, to our mind it is obvious that such rights not only had substantial value but were of much greater value than the physical benches themselves. Succinctly stated, a bench is a bench is a bench, and absent a renewable advertising permit, is of little or no value in a bench advertising business. It was the existence of such permits and only that that gave substantial value to the benches and rendered them marketable. Although their value is not susceptible to mathematical precision, using our best judgment we hold that at the very least $340,000 of the $460,788 at issue is allocable to the intangible renewal rights for the permits and goodwill. Cohan v. Commissioner, 39 F. 2d 540 (2nd Cir. 1930); Commissioner v. Seaboard Finance Company, 367 F. 2d 646 (9th Cir. 1966). Hence at most $120,788 is allocable to the section 1245 property. Since such property had an adjusted basis of $136,585.99, CBC is not required to recognize any gain pursuant to the provisions *425 of section 1245. Decision will be entered under Rule 155. Footnotes1. Apparently pursuant to this report, CBC entered $148,400 in its goodwill account.↩2. The taxable income of CBC as shown on its returns declined as follows: ↩Taxable YearAmount1966$16,307.4519676,202.919687,893.3319691,388.703. The president of ACME Bench Ad Company was Bruce Guess. As of January 1, 1969 CBC owed Bruce Guess $218, 438.95. As part of the consideration ACME Bench Ad Company assumed this obligation.↩*. Section 337, I.R.C.↩ Non-recognized gain4. Sec. 1. 1245-1. General rule for treatment of gain from dispositions of certain depreciable property. (a) General. (1) In general, section 1245(a)(1) provides that, upon a disposition of an item of section 1245 property, the amount by which the lower of (i) the "recomputed basis" of the property, or (ii) the amount realized on a sale * * * exceeds the adjusted basis of the property shall be treated as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231 (that is, shall be recognized as ordinary income). The amount of such gain shall be determined separately for each item of section 1245 property. * * *(4) For purposes of applying section 1245, the facts and circumstances of each disposition shall be considered in determining what is the appropriate item of section 1245 property. A taxpayer may treat any number of units of section 1245 property in any particular depreciation account * * * as one item of section 1245 property as long as it is reasonably clear, from the best estimates obtainable on the basis of all the facts and circumstances, that the amount of gain to which section 1245 (a) (1) applies is not less than the total of the gain under section 1245(a) (1) which would be computed separately for each unit. * * * (5) In case of a sale, * * * of section 1245 and nonsection 1245 property in one transaction, the total amount realized upon the disposition shall be allocated between the section 1245 property and the non-section 1245 property in proportion to their respective fair market values. In general, if a buyer and seller have adverse interests as to the allocation of the amount realized between the section 1245 property and the non-section 1245 property, any arm's length agreement between the buyer and the seller will establish the allocation. In the absence of such an agreement the allocation shall be made by taking into account the appropriate facts and circumstances. Some of the facts and circumstances which shall be taken into account to the extent appropriate include, but are not limited to, a comparison between the section 1245↩ property and all the property disposed of in such transaction of (i) the original cost and reproduction cost of construction, erection, or production, (ii) the remaining economic useful life, (iii) state of obsolescence, and (iv) anticipated expenditures to maintain, renovate, or to modernize.5. The parties, on brief, agree that CBC possessed ordinary goodwill worth $40,000 at the time of sale.↩6. In light of such treatment by respondent and in view of petitioner's failure to provide us with any basis upon which to apportion the purchase price allocable to the sec. 1245 properties between such properties, we will treat all sec. 1245↩ property as one item.