CHARLES W. ROBINSON III AND ANGELITA D. ROBINSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Robinson v. Commissioner
Docket Nos. 8292-79, 9266-80.
United States Tax Court
T.C. Memo 1986-382; 1986 Tax Ct. Memo LEXIS 226; 52 T.C.M. (CCH) 211; T.C.M. (RIA) 86382; August 18, 1986. *226 William J. McKenney, for the petitioners. Julian A. Fortuna, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: In these consolidated cases, respondent determined deficiencies and additions to tax in petitioners' Federal income tax as follows: Addition to Tax
Section 6653(b) [1]
Year
Deficiency
(Liability limited to Mr. Robinson)
1975
$17,088.11
$8,544.05
1976
119,411.00
60,059.50
1977
113,842.00
56,921.00
In an amended answer, respondent alleges that the deficiency and addition to tax for 1975 are $121,746.53 and $62,370.80, respectively. The issues for decision are: 1) whether respondent's method of reconstructing petitioners' unreported gambling income was reasonable; and 2) whether petitioner-husband is liable for additions to tax under section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners resided in Lilburn, *227 Georgia at the time they filed their petitions in these cases. During the years at issue, petitioner-husband (petitioner) was a bookmaker for football, basketball and baseball bets. He did not report any income from his gambling activity on his 1975, 1976, or 1977 Federal income tax return. The Cobb County police learned of petitioner's activities through a lawful wiretap on the telephone of an individual involved in commercial gambling in Cobb County, Georgia. On November 4, 1977, the Cobb County police informed the Gwinnett County police about petitioner's bookmaking activities. On Sunday, November 6, 1977, the Gwinnett County police raided petitioners' residence pursuant to a lawful search warrant. They seized cash, records from Southern Bell Telephone Company, tax returns, financial records, books on how to win at craps and blackjack, a black box containing dice and chips, and books and records reflecting illegal gambling transactions. They arrested petitioner and charged him with commercial gambling, a felony in Georgia punishable by imprisonment of not less than one year nor more than five years, or a fine not to exceed $20,000, or both. Subsequent to his arrest and *228 negotiations with the Gwinnett County District Attorney, petitioner pled quility to the lesser charge of possession of gambling devices. On November 11, 1977, Internal Revenue agents Benjamin Herring (Herring) and Michael Schmid examined to books and records seized from petitioners' residence. Herring, who specialized in the civil enforcement of wagering taxes, and had performed detailed analyses of numerous sports bookmaking records, ordered a search of the Internal Revenue Service files to determine whether petitioner had filed wagering tax returns. When he discovered that no such returns had been filed, he began to analyze the seized records. The books and records were either partially destroyed or incomplete. A yellow "Theme Book" contained a series of bets which totalled $190,735.00 for the 17-day period beginning Saturday, October 26, 1974 through Monday, November 11, 1974, a period which had a disproportionate number of Saturdays, Sundays and Mondays on which days college and professional football games were played. Petitioner's "gross wagers" during this period was more than $190,735.00, because that figure did not consider either bets recorded in other books or "vigorish, *229 " a bookmaker's commission on wagers which provides his profit margin. Petitioner's vigorish was 10 percent. If petitioner accepted a $100 bet, he received $110 if he won, or paid $100 if he lost. A bookmaker who charges a 10 percent vigorish will on average make a gross profit of 4.5454 percent of the gross wagers plus vigorish. Herring computed petitioner's average daily gross wagers (Amounts at risk by bettors) as follows: Gross wagers before vigorish:
$190,735.00
Vigorish (10 percent)
+19,073.50
Gross wagers
$209,808.50
Average daily gross wagers:
$209,808.50/17 days =
$12,341.68
Respondent computed petitioners' unreported taxable income as follows: 1975
1976
1977
Gross Wagers: $12,336.50 per day X
365 days
$4,502.822.50 $4,502,822.50
$12,336.50 per day X
311 days
$3,836,652.00
Gross profit percentage
X 4.55%  X 4.55%  X4.55%  Unreported taxable
income
$ 204,878.42
$ 204,878.42
$ 174,568.00
Respondent used gross wagers per day of $12,336.50 rather than $12,341.68 (Herring's figure) because Herring made a mathematical error in his wagering tax report. Respondent *230 used 311 days rather than 365 days for the 1977 calculation because petitioner's activities ceased after he was arrested on November 6, 1977. Petitioners had unreported gambling income of $204,878 in each of the years 1975 and 1976 and $174,568 in 1977. OPINION Petitioners concede that petitioner-husband received unreported gambling income during the years at issue. They contest only the amounts of that income. Because the deficiency for 1975 was increased by respondent's amended answer, the burden of proof as to the increase is on respondent. As to the original deficiency for 1975 and the entire deficiencies for 1976 and 1977, the burden of proof is on petitioner and respondent's determinations are presumed to be correct. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
If a taxpayer fails to maintain complete and adequate books and records, respondent may reconstruct taxable income using any method which clearly reflects income. Harbin v. Commissioner,40 T.C. 373, 377 (1963). Respondent may compute excise and income tax liabilities from gambling records covering a short period of time. *231 Dark v. United States,641 F.2d 805 (9th Cir. 1981) (excise taxes); Gordon v. Commissioner,63 T.C. 51, 61 (1974), modified 63 T.C. 501 (1975), affd. per curiam 572 F.2d 193 (9th Cir. 1977) (income taxes). The method used by respondent's agent Herring to reconstruct petitioner's bookmaking income was reasonable and substantially accurate. Any inexactitudes result from petitioner's failure to maintain books and records and his unwillingness to cooperate with respondent during the audit. We find that respondent has carried his burden of proof for the 1975 increase and has more than adequately supported the correctness of his determinations for 1975, 1976 and 1977 as set forth in the original notices of deficiency. Petitioners argue that respondent made several errors in his computation. They contend that respondent did not consider the fluctuations in seasonal betting, i.e., that more bets are placed in November when football and basketball are played than in the late spring and summer when only baseball is played. They also argue that gamblers bet more on Saturdays and Sundays than on weekdays. Thus, respondent's numbers *232 are inflated because respondent's average daily gross wagers figure was derived from the 17-day period in the theme book (October 26 - November 11) which included three football weekends. Respondent's agent Herring acknowledged some of these possible discrepancies but noted the omission from his calculations of bets that were not included in the theme book. We believe that given what he had to work with, Herring arrived at substantially correct results. In any event, petitioner has offered little or nothing as an alternative. Petitioners also contend that Herring did not consider "lay-off" bets. We hold that Herring did not error. Petitioners did not establish that any lay-off bets were made. Petitioner-husband was at the trial and testified on the stand. He failed to testify about the existence of lay-off bets. Herring testified that there was a "good possibility" that some bets were layoffs. Herring's conjecture does not establish the existence of such bets. Finally, petitioners' other contentions lack merit. Respondent does not have to use a net worth analysis to compute petitioners' unreported income. Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), *233 affg. a Memorandum Opinion of this Court. Respondent did not agree to petitioners' conclusions or totals; he agreed with only a few calculations petitioners made at trial. Herring did not testify that he could not identify a single day in which petitioner had daily gross wagers of $12,000. His testimony in this regard related to daily gross profit. The figures calculated in petitioners' brief are inaccurate, incomplete and inconclusive. Petitioner-husband's self-serving and unsubstantiated testimony that his gross income (loss) from gambling was $5,000 and ($3,000) in 1975 and 1977, respectively, is unpersuasive. The record contains no evidence to support petitioners' contention that they incurred ordinary and necessary business expenses. Respondent's/Herring's formula intrinsically considered petitioner-husband's losses. Based on the discussion above and the record as a whole, we find petitioners' unreported gambling income to be $204,878 in each of the years 1975 and 1976, and $174,568 in 1977. As to the fraud issue, respondent bears the burden of proof. He must prove, by clear and convincing evidence, that there was an underpayment of tax some part of which was due *234 to fraud with an intent to evade tax. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud may be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stone v. Commissioner,56 T.C. 213, 223-224 (1971). In the present case, several indicia of fraud are present. Petitioner consistently failed to report substantial amounts of income over a number of years. Gromancki v. Commissioner,361 F.2d 727 (7th Cir. 1966), affg. a Memorandum Opinion of this Court. Petitioner failed to maintain complete and adequate books and records. Parsons v. Commissioner,43 T.C. 378 (1964). Petitioner failed to file wagering excise tax returns. Mitchell v. Commissioner,T.C. Memo. 1968-137, affd. 416 F.2d 101 (7th Cir. 1969), cert. denied 396 U.S. 1060 (1970). Respondent has clearly and convincingly established fraud. Decisions will be entered under Rule 155. *235 Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩