T.C. Memo. 1996-196


UNITED STATES TAX COURT


WILLIAM KALE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20516-92.          Filed April 23, 1996.


<u>David L. Segal</u> and <u>Jeffry H. Homel</u>, for petitioner.

<u>Keith Gorman</u> and <u>Doug Fendrick</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PARR, <u>Judge</u>: Respondent determined deficiencies in, and additions to, petitioner's Federal income tax as follows:

| | | Additions to Tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b) | 6653(b)(1) | 6653(b)(2) |
| 1980 | $48,603 | $24,302 | – | – |
| 1982 | 1,114 | – | $557 | [1] |
| 1983 | 1,092 | – | 546 | [1] |

[1] 50 percent of the interest due on the underpayment attributable to fraud.

The issues for decision are: (1) Whether petitioner is collaterally estopped from denying that he received bribe income during the years in issue. We hold that he is not. (2) Whether petitioner received unreported bribe income during the years in issue. We hold that he did. (3) Whether petitioner is liable for additions to tax for fraud pursuant to section 6653(b).[1] We hold that he is. (4) Whether respondent is precluded from assessing tax for the years in issue due to the running of the statute of limitations. Due to our holding in issue 3 above, we hold that she is not.

                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioner resided in Pompano Beach, Florida.

<u>Petitioner</u>

Petitioner received a Bachelor of Science degree in accounting from the Drexel Institute of Technology in 1949. From 1953 to January of 1981, petitioner was employed as a Revenue Agent with the Examination Division of the Philadelphia Office of the Internal Revenue Service (IRS). As a revenue agent, petitioner was responsible for conducting examinations of filed

---

[1] All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Federal income tax returns and preparing Revenue Agent's Reports (RAR's), reflecting proposed changes to taxpayers' examined returns.

Examinations determine whether a taxpayer is due a refund, owes additional taxes, or correctly reported his tax liability. If no adjustments are made in an examination, a taxpayer receives a clearance letter indicating that the return was accepted as filed and the examination is closed. If adjustments are made, RAR's are then sent to the taxpayer, who, if in agreement with the adjustments, signs the RAR. After signing the RAR, it is forwarded to an IRS review department, which reviews the RAR and, upon accepting the RAR's findings, issues a clearance letter to the taxpayer, closing the examination.

From at least 1979, petitioner was assigned to examination group 1201, elevated to a Grade 13, the most senior revenue agent position below management, and was responsible for examining the most complex cases.

Charles Toll

Sometime in the early 1960's, petitioner examined the tax returns of Colonial Beef Company. Needleman & Toll (Needleman) was the accounting firm that handled Colonial Beef's tax returns and tax audits. Charles Toll (Toll) was an accountant at Needleman until 1966. During the years he worked at the firm, Toll was aware that Needleman was negotiating or paying bribes to IRS agents in order to receive favorable IRS examination results.

While handling the Colonial Beef examination, Toll paid a bribe to petitioner in order to receive favorable examination results.

Cynwyd

While at Needleman, Toll was responsible for the Saligman and Cravitz families' tax returns and tax audits. These families held interests in numerous partnerships. Toll was also responsible for representing those families with respect to the tax returns and tax audits of these partnerships. The managing general partners of these partnerships were three partnerships: Saligman Special, Saligman Capital, and Cynwyd Investments. Cynwyd Investments was primarily owned by members of the Saligman and Cravitz families. By 1977, Toll also held an interest in Cynwyd Investments. Hereinafter, references to the Cynwyd Group, will refer to the various partnerships and entities owned directly or indirectly by the Cravitz and Saligman families.

Toll was aware that the Saligman and Cravitz families, through Needleman, were paying bribes to various IRS agents in order to receive favorable audit results. In 1966, Toll was hired by the Saligman and Cravitz families to oversee all of the Cynwyd Group's accounting, taxes, and finances. Toll remained at that position until 1984, when a criminal investigation of the Cynwyd Group commenced.

Petitioner's Cynwyd Examinations

Sometime between October 1978 and April 1979, petitioner was assigned the examination of the 1977 tax return of the Rita

Cooper trust. Rita Cooper was a member of the Saligman family. In April 1979, petitioner began his examination of the 1977 Rita Cooper trust return and the 1977 tax return of the Harvey Saligman trust. Petitioner expanded his examination to include the 1978 tax returns for the two trusts. Neither the Rita Cooper Trust, nor the Harvey Saligman Trust, was a partner in the Cynwyd Investments partnership. The trusts did hold interests in various partnerships in which Cynwyd Investments held an interest, and which were a part of the Cynwyd Group.

Petitioner notified Toll that he was examining the two trust returns. Petitioner and Toll entered into discussions about the audit. The outcome of those discussions was that Toll would pay petitioner $105,000 to (1) extend his examination to include the 1977 and 1978 tax returns of various members of the Cynwyd Group, including, among others, the returns of Cynwyd Investments, Saligman Capital, and the individual returns of the Saligman and Cravitz family members, and (2) make sure that the examinations resulted in favorable tax treatment by overlooking various tax adjustments that otherwise would have been required. Toll agreed to pay petitioner the $105,000 in periodic installments upon Toll's receipt of IRS clearance letters from the IRS review department.

Suval's Review

From the beginning of 1979 through August 1980, Irving Suval (Suval) was the assistant review chief of the Philadelphia IRS

review department.  Suval had been employed by the IRS for over 30 years.  Petitioner was aware that Suval had received bribes in the past in order to compromise audits.  In early 1980, petitioner approached Suval, confided to him that he, petitioner, was going to receive bribe payments from Toll for favorably auditing the 1977 and 1978 Cynwyd Group returns, and offered Suval $6,500 to expedite the processing through the review department of certain of the Cynwyd Group returns which petitioner examined.

Payment of $105,000

Toll paid petitioner the $105,000 bribe in five installments beginning in August 1980 and ending November 1980.

Toll's Bribe to Suval

Sometime in 1980, before the Cynwyd Group's 1977 and 1978 returns were cleared, Toll requested petitioner to extend his examination to include the Cynwyd Group's 1979 and 1980 tax returns.  An Examination Division policy precluded petitioner from examining the 1979 and 1980 returns.  Petitioner, however, was able to ensure that the returns would be examined by group 1201, petitioner's examination group.  In September 1980, Suval became group 1201's examination manager.  Petitioner informed Suval that he arranged for the Cynwyd Group's 1979 and 1980 returns to be examined by group 1201 and that Toll would pay Suval $65,000 to compromise the audit.  Suval and petitioner agreed that Suval would pay petitioner $7,500 for setting up the $65,000 bribe.

In January 1981, petitioner retired from the IRS. Prior to retiring, petitioner assured Toll that Suval would compromise the 1979 and 1980 audit. Suval and Toll met in June 1981 to confirm the $65,000 bribe. Subsequently, Suval requested, and Toll agreed to pay, an additional $50,000, for a total of $115,000, to ensure the favorable audit. Petitioner was unaware of the additional $50,000 bribe.

## Payment of the $65,000 Bribe

Toll paid Suval the $115,000 in installments beginning in the Autumn of 1981, and ending in 1983. Suval paid petitioner the agreed upon $7,500 in installments as Suval received his payments from Toll.

## Criminal Investigation

In early 1984, IRS inspectors confronted Suval with their knowledge of Suval's having receiving bribes. Suval agreed to cooperate with the U.S. Government by wearing a "body wire" in conversations Suval had with petitioner in April 1984. Suval was subsequently indicted for, and pleaded guilty to, bribery and conspiracy to commit bribery, among other offenses.

Concurrently, a criminal investigation of the Cynwyd Group's operations commenced in connection with their bribing IRS officials. Toll was subsequently indicted for, and pleaded guilty to, bribery and conspiracy to commit bribery, among other offenses.

On February 4, 1986, petitioner was indicted by the Federal Grand Jury for and in the U.S. District Court for the Eastern

District of Pennsylvania for one count of conspiracy to defraud the United States under 18 U.S.C. sec. 371 (1994) and one count of aiding and abetting the bribery of a public official under 18 U.S.C. sec. 201(b) (1994).

In count one of the indictment the grand jury charged petitioner of conspiring with Toll and Suval to defraud the United States. The object of the conspiracy was for petitioner and Suval to receive bribes from Toll in return for conducting inadequate examinations of the Cynwyd Group's tax returns. Among the 55 overt acts contained in count one of the indictment were the following: (1) Petitioner's meeting with Toll at various times to discuss examination of specific Cynwyd Group returns; (2) petitioner's causing the IRS to issue certain clearance letters; (3) Toll's meeting with Suval at various times to discuss the examination of various Cynwyd Group returns; (4) Suval's causing the IRS to issue certain clearance letters; (5) Toll's making payments to Suval.

In its instructions to the jury at petitioner's criminal trial concerning the count of conspiracy, the court stated as follows:

> In order to meet the burden of proof as to * * *[the Count of conspiracy] against * * * [petitioner], there are five things that the Government must prove beyond a reasonable doubt:
>
> First, that the conspiracy described in the Bill of Indictment was formed and was existing at or about the times that are alleged;
> Secondly, that * * * [petitioner] intentionally, willfully, became a member of that conspiracy;

That thereafter <u>one of the conspirators committed at least one - not all, but at least one - of the overt acts charged in the indictment</u> at or about the time and place alleged;

Fourth, that such overt act was done in furtherance of some object or purpose of the conspiracy; and

Fifth, that one of the conspirators did something on or after February 4, 1981, to further some aspect of the conspiracy, that is, to accomplish one or more of its purposes. [Emphasis added.]

Petitioner was subsequently convicted on both the count of conspiracy and the count to aid and abet.

Deficiency notice

Based on facts adduced at petitioner's criminal trial, respondent determined the deficiencies set out above. In the deficiency notice, respondent made adjustments increasing petitioner's gross income by $3,750 for each of the 1982 and 1983 taxable years based on Suval's testimony at the criminal trial. Suval testified that he paid petitioner $7,500 over a 2-year period ending in 1983, but because he did not say exactly when the $7,500 was paid, respondent apportioned the $7,500 equally between 1982 and 1983.

OPINION

I. Deficiency

A taxpayer is required to maintain records sufficient to establish their tax liabilities. Sec. 6001. If the taxpayer fails to maintain such records or the records maintained are inadequate, then respondent is authorized to reconstruct income

by any reasonable method, which in her opinion clearly refects the taxpayer's income. Petzoldt v. Commissioner, 92 T.C. 661, 693-694 (1989); Harbin v. Commissioner, 40 T.C. 373, 377 (1963). Based on facts adduced at petitioner's criminal trial, respondent determined that petitioner received unreported bribe income for the years in issue. It is clear that bribes received are includable in gross income. Sec. 61(a); sec. 1.61-14(a), Income Tax Regs. It is also well settled that, except where otherwise provided in the Internal Revenue Code or Tax Court Rules of Practice and Procedure, the burden of proof rests with petitioner. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Thus, petitioner bears the burden of proving that he did not receive the bribes in question during the years in issue and that respondent's determinations are incorrect.

A. Collateral Estoppel

Respondent first argues that petitioner, by his conviction in Federal District Court on the count of conspiracy to bribe, is collaterally estopped from denying that he received the bribes in question. We disagree.

The Court has recognized that a criminal conviction can operate as collateral estoppel in a subsequent civil case. Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68 (1964). However, the judgment in the prior action will act as an estoppel only as to those issues or elements, upon the determination of which the

verdict of guilty was necessarily rendered.  Commissioner v. Sunnen, 333 U.S. 591 (1948).

In petitioner's criminal trial, the judge instructed the jury that in order to find petitioner guilty of conspiracy, the jury had to find, among other things:

> Secondly, that * * * [petitioner] intentionally, willfully, became a member of that conspiracy;
>
> That thereafter one of the conspirators committed at least one - not all, but at least one - of the overt acts charged in the indictment at or about the time and place alleged;
>
> Fourth, that such overt act was done in furtherance of some object or purpose of the conspiracy; and
>
> Fifth, that one of the conspirators did something on or after February 4, 1981, to further some aspect of the conspiracy, that is, to accomplish one or more of its purposes. [Emphasis added.]

There are 55 overt acts found in the bill of indictment relating to the count of conspiracy.  The large majority of those acts are not bribery payments to petitioner.  Some of the acts are bribe payments from Toll to Suval which occurred after February 4, 1981.  Some of the acts are meetings between Toll and Suval which occurred after February 4, 1981.  In order to reach the verdict, the jury was only required to find that one of the conspirators-- Toll, Suval, or petitioner--performed one of these 55 overt acts, and that one of the conspirators did something to further the conspiracy after February 4, 1981.  The jury was not, however, required to find that petitioner actually received bribe payments

in the amounts which respondent has included in his gross income. Accordingly, petitioner is not estopped from denying that he did not receive such bribe payments.

B. Petitioner's Burden of Proof

We have taken petitioner's proposed findings of fact into account even though we were not required to as petitioner violated Rule 151(e)(3), which prescribes how litigants are to treat proposed findings of fact.[2]  See Van Eck v. Commissioner, T.C. Memo. 1995-570.  Petitioner failed to include separate, numbered, statements of fact, or to object to respondent's proposed findings in his reply.  Petitioner appeared to concede in his statement of "facts adduced at trial" that petitioner received a $105,000 bribe from Toll.

Petitioner has failed to prove respondent's determinations to be incorrect.  Petitioner does not attempt to meet his burden

---

[2] Rule 151(e)(3) states that briefs shall contain:

Proposed findings of fact (in the opening brief or briefs), based on the evidence, in the form of numbered statements, each of which shall be complete and shall consist of a concise statement of essential fact and not a recital of testimony nor a discussion or argument relating to the evidence or the law. In each such numbered statement, there shall be inserted references to the pages of the transcript or the exhibits or other sources relied upon to support the statement. In an answering or reply brief, the party shall set forth any objections, together with the reasons therefor, to any proposed findings of any other party, showing the numbers of the statements to which the objections are directed; in addition, the party may set forth alternative proposed findings of fact.

of proving that he did not receive unreported bribe income during the years in issue, but rather spends the bulk of his time arguing that respondent did not meet her burden of proving fraud. Petitioner states in his brief:

> Respondent enjoys no presumption of correctness in her assessment. Instead, * * * [petitioner] is presumed not to have received * * * [the bribes] unless Respondent affirmatively establishes (1) that * * * [petitioner] took the bribes and, if so, (2) how much he received * * *.

Petitioner's understanding of who bears the burden of proof is skewed. Despite respondent's burden of proving fraud, Rule 142(b), petitioner still bears the burden of proof regarding the deficiency. Rule 142(a); Welch v. Helvering, supra.[3] Viewing the procedural posture of this case in an incorrect light, petitioner offers little evidence other than his own testimony, which is insufficient to overcome respondent's determination of income tax deficiencies. Petitioner's testimony was at complete odds with the hard evidence. For example, petitioner claims that his trail of investigation led him to the tax returns of Cynwyd Investment and Saligman Capital, which opened the door for investigation of the Cynwyd Group's returns. However, a review of petitioner's work chronology finds that result impossible. Petitioner first examined the 1977 and 1978 returns of the Rita Cooper Trust and the Harvey Saligman Trust. He found a problem

---

[3] In regard to the burden of proof in fraud cases, see Franklin v. Commissioner, T.C. Memo. 1993-184.

concerning a certain credit, which was passed through to the trusts from a partnership called Traylor Syndicate (Traylor). It was this credit, according to petitioner, which paved the trail to the Cynwyd Group. We do not see how. Logically, the next tax returns that petitioner should have examined were those of Traylor, through which the credits passed to the trusts. However, the next returns which petitioner did, in fact, examine were those of Cynwyd Investments and Saligman Capital. Yet, the trusts were not partners in either of those partnerships. We find no basis for petitioner's extension of his investigation to include the Cynwyd Group, other than that he was paid by Toll to do so. Accordingly, we disregard petitioner's testimony. Petitioner offers little other evidence to aid him in meeting his burden of proof.

We find, therefore, that petitioner has failed to carry his burden of proving that he did not receive unreported bribe income of $105,000 in 1980 and $7,500 during 1982 and 1983. Additionally, petitioner has not shown that respondent's method of allocating the $7,500 equally between 1982 and 1983 is unreasonable. Harbin v. Commissioner, 40 T.C. at 377. Accordingly, we sustain respondent's deficiency determinations.

II. Additions to Tax for Fraud

Respondent determined that petitioner is liable for additions to tax for fraud under section 6653(b) for 1980, and section 6653(b)(1) and (2) for 1982 and 1983.

A. Section 6653(b) and Section 6653(b)(1)

For 1980, section 6653(b), and for 1982 and 1983, section 6653(b)(1) provide for an addition to tax in an amount equal to 50 percent of any underpayment in tax if any part of such underpayment is due to fraud.

The existence of fraud is a question of fact to be determined on the basis of the entire record.  Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  The principal issue in ascertaining whether fraud is present is whether the taxpayer has engaged in conduct with the specific intent to evade a tax known or believed to be properly owing.  Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

For purposes of the section 6653(b) and section 6653(b)(1) additions, the Commissioner bears the burden of proving, by clear and convincing evidence, (1) that some underpayment of tax existed for each of the years in issue and, (2) that some part of the underpayment of tax was attributable to the taxpayer's fraud. Sec. 7454(a); Rule 142(b); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Imburgia v. Commissioner, 22 T.C. 1002, 1014 (1954).  Where fraud is determined for more than 1 year, the Commissioner's burden applies separately to each year.  Barbuto v. Commissioner, T.C. Memo. 1991-342 (citing Estate of Stein v. Commissioner, 25 T.C. 940, 959-963 (1956), affd. sub nom. Levine v. Commissioner, 250 F.2d 798 (2d Cir. 1958)).

1. Underpayment

The first element requires the Commissioner to establish the existence of some underpayment of tax for each of the years in issue. Section 6653(c) defines underpayment as having in general the same meaning as "deficiency;" i.e., to mean the amount by which the tax imposed exceeds the amount of tax shown by the taxpayer on his return. Sec. 6211. To prove an underpayment, the Commissioner cannot satisfy her burden by relying solely on the taxpayer's failure to prove error in the determination of the deficiencies. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969).

Respondent's case rests heavily on the testimony of Toll and Suval during the trial in this proceeding. As petitioner states in his brief:

> Mr. Toll claims to have paid * * * [petitioner] a
> $105,000 bribe to subvert the 1977 and 1978 audits; Mr.
> Suval says he paid * * * [petitioner] $7,500 for having
> introduced him to Mr. Toll. * * * If * * * [Toll and
> Suval's] believed testimony is clear and convincing,
> then * * * [petitioner] owes taxes for the years at bar
> * * *.

We have found the testimony of Toll, in particular, and Suval to be trustworthy and convincing. We acknowledge that Toll and Suval pleaded guilty to various crimes in relation to the bribes. We do not find that either of them had a motive that would prompt false testimony in this case. We acknowledge that, at times, Toll's testimony was not in complete accord with Suval's. However, the events of this case occurred over a decade ago. We

find the few contradictions in testimony to be understandable and of little importance.

Furthermore, other evidence, including Toll's records of the bribes he paid petitioner supports their testimony. We have also found the transcript of the "wired" conversation between Suval and petitioner, though not explicit, to be very damaging to petitioner.

We wish to note, however, that the expert report and opinion of John Lackey add little weight to respondent's case. First, Mr. Lackey did not review all the returns which petitioner examined. Additionally, the mistakes that Mr. Lackey found in petitioner's 1977 and 1978 tax return examinations could have been unintentional, possibly resulting from petitioner's completing them in a hurry, or from the fact that petitioner did not have the extensive examination resources that Mr. Lackey had. This conclusion could be supported by the fact that Mr. Lackey found similar mistakes in the 1979 and 1980 Cynwyd Group returns which he examined, even though petitioner did not examine those returns.

Nonetheless, even though we give little weight to Mr. Lackey's report, we find that respondent has proven, by clear and convincing evidence, that petitioner received unreported bribe income in 1980, 1982 and 1983. Accordingly, respondent has met her burden of proving that underpayments existed for the years in issue.

2. <u>Fraudulent Intent</u>

The second element requires the Commissioner to prove fraudulent intent on the part of the taxpayer.  Fraud will never be presumed.  <u>Beaver v. Commissioner</u>, 55 T.C. 85, 92 (1970). Respondent may prove fraud through circumstantial evidence, as direct proof of the taxpayer's intent is rarely available.  The taxpayer's entire course of conduct may establish the requisite fraudulent intent.  <u>Stone v. Commissioner</u>, 56 T.C. 213, 223-224 (1971); <u>Otsuki v. Commissioner</u>, <u>supra</u> at 105-106.

Courts have developed various factors or "badges" that tend to establish fraud.  <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 910 (1988).  These include: (1) A pattern of understatement of income; (2) inadequate records; (3) concealment of assets; (4) income from illegal activities; (5) attempting to conceal illegal activities; (6) implausible or inconsistent explanations of behavior; and (7) dealing in cash.  <u>Id.</u>  Repeated understatements in successive years, when coupled with other circumstances showing an intent to conceal or misstate taxable income, present a basis on which we may properly infer fraud.  <u>Patton v. Commissioner</u>, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148.

We believe petitioner's underpayments to have been due to fraud.  Petitioner was convicted for being a part of a conspiracy to defraud the United States.  He received bribes during the years in issue.  Petitioner was employed as a revenue agent at

the IRS for nearly 30 years, reaching the highest possible grade allowed to nonmanagement agents, and was fully aware that those bribes are includable in income and should have been reported on his Federal tax returns. Petitioner did not report those bribes. He did not maintain any records of the bribes. All in all, we find that petitioner's entire course of conduct reveals that he willfully intended to prevent the collection of tax he knew was owing on the illegal bribe income. We therefore find that the full amount of the underpayment for each year is attributable to petitioner's fraud. Accordingly, we sustain respondent's determination of additions to tax under sections 6653(b) and section 6653(b)(1).

## B. Section 6653(b)(2)

Under section 6653(b)(2), an addition to tax equal to 50 percent of the interest payable under section 6601 is imposed on the portion of the underpayment attributable to fraud. Respondent bears the burden of proving by clear and convincing evidence the specific portion of the underpayment due to fraud in each year. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Accordingly, to adjudicate an addition to tax under section 6653(b)(2), first we must examine the evidence and satisfy ourselves as to the amount that clearly and convincingly is an underpayment. Then, we must determine whether any or all of such amount clearly and convincingly is due

to fraud.  Only to that extent can respondent prevail in her determination of an addition to tax under section 6653(b)(2).

Based, in part, on the testimony of Toll and Suval and records kept by Toll, we are convinced that petitioner received an unreported $105,000 bribe in 1980, and thus an underpayment attributable to fraud resulting from that amount exists for that year.  The $7,500 bribe, however, poses a problem.  We have sustained respondent's adjustment in regard to the $7,500.  We did so because petitioner failed to meet his burden of proving that he did not receive that amount over 1982 and 1983 and that respondent's method of allocation was unreasonable.  We have found, based on respondent's evidence, which we regard as clear and convincing, that petitioner did indeed receive from Suval unreported bribe payments totaling $7,500.  However, respondent has not adequately proven when petitioner received those payments.  Suval testified that he received bribe payments from Toll over a course of 2 years, beginning at the end of 1981, and that he paid petitioner the $7,500 in installments, upon receiving his own payments from Toll.  Suval did not testify, however, that he paid the entire $7,500 to petitioner in 1982 and 1983.  Notwithstanding that fact, we can approximate petitioner's receipts, bearing heavily on respondent who bears the burden of proof on this issue.  Sec. 6653(b)(2); Rule 142(b); see Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Exhibit 16-P includes a record of Toll's $65,000 bribe payments to Suval (not included

was the subsequent $50,000 bribe promised to Suval of which petitioner was unaware). Of that $65,000, 8 percent, or $5,000, was paid in 1981; 46 percent, or $30,000, was paid in each of the years 1982 and 1983. Based on that evidence, we find that of the $7,500 that petitioner received from Suval, 8 percent, or $600, was paid to petitioner in 1981, and 46 percent, or $3,450 was paid to petitioner in each of the years 1982 and 1983. Accordingly, we find petitioner to have had unreported income of $3,450 in each of the years 1982 and 1983. See Cohan v. Commissioner, supra.

We have already determined that the entire amount of each such underpayment is due to fraud. Therefore, the "portion of the underpayment * * * attributable to fraud" is the portion of the underpayment resulting from unreported income of $3,450 in both 1982 and 1983. Accordingly, the addition to tax under section 6653(b)(2), for each of the years 1982 and 1983, is equal to 50 percent of the interest payable under section 6601 with respect to the underpayment resulting from unreported income of $3,450.

III. Statute of Limitations

Section 6501(c)(1) provides for the assessment of tax at any time in the case of a fraudulent return. We have found that respondent has proven fraud on the part of petitioner for each of the years in issue and, accordingly, the period for assessment

remains open for petitioner.  <u>Vannaman v. Commissioner</u>, 54 T.C. 1011, 1016-1018 (1970).

<u>Decision will be entered</u>

<u>under Rule 155.</u>