T.C. Memo. 1997-354

UNITED STATES TAX COURT

DAVID F. DRIGGERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22703-94.                    Filed August 4, 1997.

David F. Driggers, pro se.

<u>Michael D. Zima</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income taxes, additions to tax, and
penalties as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Sec. 6661 | Accuracy-Related Penalty Sec. 6662(c) |
|------|-----------|------------------|-----------|---------------------|
| 1988 | $19,401 | $4,818 | $5,112 | -- |
| 1989 | 19,184 | 4,741 | -- | $3,837 |

| 1990 | 19,082 | 4,639 | -- | 3,816 |
| 1991 | 11,857 | -- | -- | 2,371 |

The issues for decision are: (1) Whether petitioner underreported his income for 1988, 1989, 1990, and 1991, as determined by respondent; (2) whether petitioner is liable for the additions to tax for failure to file timely returns for 1988, 1989, and 1990; (3) whether petitioner is liable for the addition to tax pursuant to section 6661[1] for an understatement of income tax on his 1988 Federal income tax return; and (4) whether petitioner is liable for the accuracy-related penalties pursuant to section 6662(c) for 1989, 1990, and 1991.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the first and second supplemental stipulations of facts are incorporated herein by this reference. Petitioner resided in Ponte Vedra Beach, Florida, at the time he filed his petition. At all times between December 31, 1987, and January 1, 1992, petitioner was married to Arlene C. Driggers.

Petitioner filed Federal income tax returns for the taxable years 1988, 1989, and 1990, on September 9, 1991. Petitioner timely filed his 1991 Federal income tax return. On his returns for 1988 and 1989, petitioner reported income from First Coast

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Engineers, Inc. (FCE), of $10,501 and $10,300 respectively. On his returns for 1990 and 1991, petitioner reported no income from Paragon Construction Group, Inc. (PCG) in 1990 and $37,100 in 1991. After examining petitioner's returns, respondent determined that petitioner underreported his income during the years in issue. Relying primarily on the income figures listed in two separate loan applications completed and signed by petitioner, respondent determined that petitioner's total income from FCE was $76,800 in 1988 and $76,800 in 1989 and that his income from PCG was $70,902 in 1990 and $76,960 in 1991.

## Loan Applications

The first loan application was completed by petitioner and Mrs. Driggers in an attempt to finance the construction of their new residence. Petitioner and Mrs. Driggers submitted a Residential Loan Application on March 3, 1989 (1989 Application). On the 1989 Application, petitioner listed his current gross monthly income as $6,400, which translates to $76,800 per year for 1989. In connection with the 1989 Application, petitioner authorized his employer, FCE, to verify his employment. On the Request for Verification of Employment form completed by FCE on March 7, 1989, petitioner's current weekly salary is listed as $1,476.92, which translates to $76,799.84 per year for 1989. In addition, this verification form also lists petitioner's 1988 salary as $76,800.

Petitioner and Mrs. Driggers completed a second loan application in an attempt to refinance their home mortgage in 1992 (the 1992 Application). On the 1992 Application, petitioner and Mrs. Driggers listed their combined monthly income as $9,438, which translates to $113,256 annually. With this application, petitioner and Mrs. Driggers submitted what they purported to be their 1990 Federal income tax return. On this purported return, petitioner and his wife claimed to have earned $97,882 in wages during 1990. A Form W-2 was included with this purported return listing petitioner's wages from his employer, PCG, as $70,902.08 for 1990. Also submitted with the 1992 Application was a purported copy of petitioner's and Mrs. Driggers' 1991 Federal income tax return. This purported return lists petitioner's and Mrs. Driggers' income as $99,604 for 1991. A Form W-2 was also included with this purported return listing petitioner's 1991 wages from PCG as $76,960.11. These purported returns and Forms W-2 were never filed with the Internal Revenue Service.

Respondent's reliance on petitioner's income figures listed in these loan applications is supported by additional evidence.

Income From First Coast Engineers, Inc.

Petitioner and Howard Young incorporated FCE on April 4, 1984. FCE was engaged in the construction business as a general contractor from its incorporation until sometime in 1990. Petitioner was a 50-percent shareholder of FCE and its vice

president.  Mr. Young owned the remaining 50 percent of FCE's shares and was its president.  FCE paid both petitioner and Mr. Young salaries based upon how much time each put into the company during a given week.  With the exception of a brief period during 1988, petitioner worked for FCE on a full-time basis from its inception until the day it ceased operations in 1990.  In addition to petitioner and Mr. Young, FCE employed Theresa J. Fischer as a receptionist/bookkeeper/office secretary.

Prior to incorporating FCE, petitioner owned his own painting business.  This business accrued Federal tax liabilities, which petitioner failed to pay.  An agent of the Commissioner came to the offices of FCE to inquire about the payment of these tax liabilities and issued a levy upon the wages of petitioner.  In an effort to avoid the levy of his wages, petitioner directed that what was termed his "wages" would be lowered to $201 per week, effective February 17, 1987. Petitioner received checks written to him from FCE in amounts totaling $9,616.38 in 1988, $10,296.96 in 1989, and at least $4,997.08[2] in 1990.

---

[2]In auditing petitioner's 1990 tax year, respondent issued summonses for checks written on the First Coast Engineers, Inc. (FCE), account at Barnett Bank which were in excess of $1,000. Therefore, if there were any checks written by FCE to petitioner in amounts less than $1,000, they are not in the record.

To compensate for the illusory reduction in his salary, petitioner directed Ms. Fischer to write checks on FCE's account payable either to cash, a fictitious subcontractor called "Delta Design," or to Ms. Fischer herself. Ms. Fischer wrote approximately four checks to "Delta Design" on FCE's account, each in an amount of approximately $2,000. If the payee on the check were Ms. Fischer, she would give the proceeds to petitioner. Petitioner received $33,746.01 in 1988, $34,018.99 in 1989, and $6,759.86 in 1990, in this manner.

During 1988, 1989, and 1990, FCE leased a Chevrolet Corvette for petitioner's use. During this period, FCE paid the lease payments for this automobile, which totaled $5,417.24 in 1988, $5,053.91 in 1989, and $2,701.59 in 1990. In addition, all expenses relating to this automobile were paid for by FCE. Petitioner used this vehicle for personal trips. Petitioner did not present any documentation regarding the business use of this vehicle.

FCE also paid for certain vacations for petitioner and Mrs. Driggers, which included two trips to Las Vegas, Nevada, and a trip to Miami, Florida. On occasion, FCE purchased tickets to various professional tennis and golf tournaments for petitioner and his wife. Petitioner did not present any evidence that any business was conducted during these occasions.

Petitioner used FCE funds to partially pay for the construction of his personal residence. In particular, FCE paid First Coast Supply between $8,000 and $10,000 to build and install kitchen cabinets in petitioner's new home.

In late 1989, or early 1990, petitioner and Mr. Young had a falling out, and FCE ceased operations by early 1990. Upon the closing of FCE, the company's computer and copier were stored at the apartment of Ms. Fischer until they were given to petitioner.

Income From Paragon Construction Group, Inc.

On April 4, 1990, petitioner incorporated PCG, which operated as a general contractor in the construction business. Petitioner was the sole shareholder and president of this corporation. Petitioner started PCG with a capital contribution of $20,000. PCG had a corporate bank account at First Union National Bank of Florida. Petitioner had complete control over this account. Checks written on PCG's corporate account directly to petitioner totaled $39,219.91 in 1990 and $82,162.80 in 1991.

In addition to the checks written directly to petitioner, PCG also paid for labor, materials, building permits, and property taxes associated with the construction of petitioner's personal residence, including the following:

| Check No. | Date | Payee | Amount |
|-----------|---------|-------------------|------------|
| 107 | 4/20/90 | Coastal Interiors | $2,200.00 |

| | | | |
|---|---|---|---|
| 113 | 5/01/90 | A & B Hardwood Flooring | 2,426.50 |
| 116 | 5/04/90 | Rambo's Landscaping | 194.00 |
| 118 | 5/06/90 | Wesley Luchenbill | 510.00 |
| 121 | 5/11/90 | A & B Hardwood Flooring | 1,757.50 |
| 122 | 5/11/90 | St. Johns County | 1,347.00 |
| 123 | 5/12/90 | Wesley Luchenbill | 432.00 |
| 126 | 5/22/90 | Rambo's Landscaping | 375.00 |
| 140 | 9/13/90 | A & B Hardwood Flooring | 587.00 |
| 170 | 12/17/90 | Wesley Luchenbill | 400.00 |

Furthermore, PCG paid for numerous other miscellaneous expenses, which respondent determined were petitioner's personal expenses, including:

| Check No. | Date | Payee | Amount |
|---|---|---|---|
| 139 | 9/06/90 | Circuit City | $314.43 |
| 151 | 10/17/90 | Nationwide Insurance | 703.00 |
| 157 | 11/06/90 | Circuit City | 532.49 |
| 172 | 12/18/90 | Southern Bell | 300.75 |
| 215 | 2/04/91 | Southern Bell | 103.10 |
| 216 | 2/04/91 | Geico Insurance Company | 230.96 |
| 217 | 2/05/91 | Ford Motor Credit Co. | 826.25 |
| 218 | 2/04/91 | Jiffy Lube | 27.68 |
| 230 | 2/25/91 | The Haskell Company | 4,772.27 |
| 233 | 3/04/91 | Ponte Vedra Inn & Club | 181.97 |
| 234 | 3/02/91 | ATP Tour | 73.60 |
| 236 | 3/04/91 | Ford Motor Credit Co. | 399.01 |
| 237 | 3/04/91 | Geico Insurance Company | 118.45 |
| 247 | 3/15/91 | Southern Bell | 86.27 |
| 248 | 3/15/91 | Geico Insurance Company | 61.59 |
| 267 | 4/01/91 | Ford Motor Credit Co. | 399.01 |
| 281 | 4/17/91 | Oak Bridge Club | 412.61 |
| 286 | 4/18/91 | Cesery Blvd. Pawn Shop | 63.90 |
| 287 | 4/17/91 | Tax Collector | 71.25 |
| 292 | 4/22/91 | Ford Motor Credit Co. | 399.01 |
| 293 | 4/22/91 | Southern Bell | 219.06 |
| 301 | 4/29/91 | Ponte Vedra Inn & Club | 1,291.23 |
| 302 | 4/29/91 | ATP Tour | 161.01 |
| 309 | 5/07/91 | Geico Insurance Company | 63.58 |
| 326 | 5/07/91 | The Haskell Company | 7,547.46 |
| 343 | 6/03/91 | Ford Motor Credit Co. | 399.01 |
| 345 | 6/04/91 | The Haskell Company | 271.63 |
| 348 | 6/04/91 | Southern Bell | 94.00 |
| 359 | 6/12/91 | Tax Collector | 20.00 |
| 361 | 6/18/91 | ATP Tour | 202.56 |
| 369 | 6/21/91 | Jacksonville Fed. Credit Union | 322.99 |
| 376 | 6/28/91 | Tax Collector | 54.10 |
| 377 | 6/31/91 | The Haskell Company | 459.00 |
| 379 | 7/03/91 | Ford Motor Credit Co. | 399.01 |

| 395 | 7/16/91 | Southern Bell | 319.49 |
|-----|---------|---------------|--------|
| 407 | 7/22/91 | City of St. Augustine (parking div.) | 7.50 |
| 408 | 7/22/91 | Clerk of the County Court | 131.00 |
| 413 | 7/23/91 | R. A. Green, P.A. | 487.50 |
| 417 | 7/23/91 | Geico Insurance Company | 168.24 |
| 419 | 7/26/91 | Ponte Vedra Inn & Club | 334.08 |
| 420 | 7/26/91 | ATP Tour | 104.20 |
| 425 | 8/02/91 | Ford Motor Credit Co. | 399.01 |
| 428 | 8/05/91 | The Haskell Company | 459.00 |
| 448 | 8/27/91 | Tax Collector | 13.82 |
| 454 | 9/03/91 | The Haskell Company | 459.00 |
| 464 | 9/05/91 | Jacksonville Fed. Credit Union | 625.98 |
| 465 | 9/05/91 | Ford Motor Credit Co. | 399.01 |
| 486 | 9/17/91 | Southern Bell | 330.42 |
| 484 | 9/17/91 | Geico Insurance Company | 87.12 |
| 498 | 9/23/91 | Ford Motor Credit Co. | 399.01 |
| 512 | 10/04/91 | Geico Insurance Company | 86.52 |
| 514 | 10/04/91 | The Haskell Company | 459.00 |
| 520 | 10/15/91 | Southern Bell | 120.00 |
| 530 | 10/17/91 | Ponte Vedra Inn & Club | 291.27 |
| 531 | 10/17/91 | ATP Tour | 203.52 |
| 537 | 10/24/91 | Ford Motor Credit Co. | 399.01 |
| 541 | 10/24/91 | Jacksonville Fed. Credit Union | 312.99 |
| 542 | 10/24/91 | Geico Insurance Company | 85.32 |
| 543 | 10/24/91 | Chemlawn | 145.50 |
| 554 | 10/28/91 | Southern Bell | 210.55 |
| 567 | 11/08/91 | The Haskell Company | 459.00 |
| 586 | 12/04/91 | Ford Motor Credit Co. | 399.01 |
| 588 | 12/06/91 | The Haskell Company | 459.00 |
| 589 | 12/06/91 | Jacksonville Fed. Credit Union | 310.92 |
| 596 | 12/06/91 | Cone, Purcell, Miller, Flanagan, P.A. | 250.00 |
| 599 | 12/13/91 | Mahoney, Adams & Criser, P.A. | 1,641.27 |
| 601 | 12/13/91 | Southern Bell | 207.59 |

Petitioner has not presented any evidence to substantiate the business nature of any of these expenses.

## OPINION

The principal issue in this case is whether petitioner realized unreported income for the taxable years 1988, 1989,

1990, and 1991. Respondent reconstructed petitioner's income during the years in issue from figures that petitioner listed on various loan applications and on purported copies of his Forms 1040 and Forms W-2 attached to one of these applications. Respondent contends that the use of these figures is supported by other evidence demonstrating petitioner's receipt of unreported income from FCE and PCG. In his post-trial brief, petitioner argues that respondent's determination is "not based on any fact or evidence and is completely unfounded." We disagree.

Respondent's determinations are normally entitled to a presumption of correctness. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). In order to deprive respondent's determination of this presumption, petitioner must demonstrate that the determination is arbitrary and unreasonable. Harbin v. Commissioner, 40 T.C. 373, 376 (1963). Petitioner has failed to so demonstrate. Respondent has provided sufficient evidence to show that the determinations were neither arbitrary nor unreasonable.

Here, respondent reconstructed petitioner's income using the figures that petitioner himself listed on various loan applications and on the purported copies of his tax returns and Forms W-2 attached to one of these loan applications. This Court has previously held that the use of income figures supplied by the taxpayer himself "is an eminently reasonable and fitting

method for computing * * * [the taxpayer's] true income." Schroeder v. Commissioner, T.C. Memo. 1989-110 (held that the use of income figures listed on invalid Federal income tax returns was a reasonable method of reconstructing the taxpayer's income); see also Hill v. Commissioner, T.C. Memo. 1995-136, affd. without published opinion 86 F.3d 1155 (6th Cir. 1996); Schroeder v. Commissioner, T.C. Memo. 1986-583. Therefore, respondent's use of this method of reconstruction was well within the discretion of respondent. Sec. 446(b).

At trial, respondent also introduced summaries of numerous checks drawn on FCE's account, which list Ms. Fischer as the payee. Ms. Fischer identified the checks which were cashed for petitioner. These checks totaled $33,746.01 in 1988, $34,018.99 in 1989, and $6,759.86 in 1990. These amounts exceed the income reported by petitioner on his delinquent returns for these respective years. We found Ms. Fischer's testimony persuasive and, consequently, find that petitioner received income during 1988, 1989, and 1990 in amounts greater than that reported on his Federal income tax returns for these years.

Respondent also presented evidence that petitioner received unreported income, including checks written on PCG's corporate account during 1990 and 1991, which list petitioner as the payee. These checks totaled $39,219.91 in 1990 and $82,162.80 in 1991.

Although we find that petitioner underreported his income during the years in issue, it is not possible to determine the exact amount based on the record before us.  Where, as here, a taxpayer fails to keep books and records sufficient to establish the amount of his tax liabilities, or if the records maintained do not clearly reflect income, then the Commissioner is authorized to reconstruct income by any method which, in the Commissioner's opinion, clearly reflects the taxpayer's income. Sec. 446(b); Harbin v. Commissioner, supra at 377; sec. 1.446-1(b)(1), Income Tax Regs.  The Commissioner may use any reasonable method to compute the income, and no particular method is required.  Campbell v. Guetersloh, 287 F.2d 878, 880 (5th Cir. 1961).  The Commissioner's method need not be exact but must be reasonable.  Holland v. United States, 348 U.S. 121 (1954); Rowell v. Commissioner, 884 F.2d 1085 (8th Cir. 1989), affg. T.C. Memo. 1988-410.  Courts permit the Commissioner broad discretion in this area, requiring only that the estimate be rational "'in logic and in light of normal business experience.'"  Rowell v. Commissioner, supra at 1087 (quoting 2 Mertens, Law of Federal Income Taxation, sec. 12.108, at 443 (1989 rev.)).  As the Court of Appeals for the Ninth Circuit explained in Bradford v. Commissioner, 796 F.2d 303, 306 (9th Cir. 1986) (quoting Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968), affg. T.C. Memo. 1966-87), affg. T.C. Memo. 1984-601,

"Arithmetic precision was originally and exclusively in [the taxpayer's] hands, and he had a statutory duty to provide it. * * * [H]aving defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination.  Nor should he be overly chagrined at the Tax Court's reluctance to credit every word of his negative wails."

Petitioner has failed to persuade us that respondent's determination of his income for any of the years in issue was erroneous.  Petitioner relied heavily on his own testimony to satisfy his burden of proof.  We found most of petitioner's trial testimony to be general, vague, conclusory, and questionable in material respects.  Under the circumstances presented here, we are not required to, and generally do not, rely on petitioner's testimony to sustain his burden of establishing error in respondent's determinations.  See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  We believe that respondent's method of reconstruction was rational, and accordingly, we sustain respondent's determination of petitioner's income.

Additions to Tax and Penalties

Respondent determined that petitioner is liable for the additions to tax for failure to file timely returns for 1988, 1989, and 1990. Section 6651(a)(1) imposes an addition to tax in case of failure to file a timely tax return, unless the taxpayer can show that such failure is due to reasonable cause and not due to willful neglect. Petitioner neither argued nor offered any evidence to show that the additions to tax pursuant to section 6651(a)(1) should not be imposed. Therefore, we sustain respondent's determination under section 6651(a)(1).

Respondent also determined that petitioner is liable for the addition to tax for substantial understatement of income tax, as prescribed by section 6661 with respect to his 1988 return. As in effect during 1988, section 6661(a) imposed an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Finally, respondent determined that petitioner is liable for the accuracy-related penalties prescribed by section 6662 with respect to his 1989, 1990, and 1991 returns. Section 6662(a) imposes a penalty equal to 20 percent of the portion of any underpayment attributable to a substantial understatement of income tax.

Both sections 6661 and 6662 define a "substantial understatement" as an understatement of tax liability equal to the greater of 10 percent of the tax required to be shown for the

taxable year or $5,000. Secs. 6661(b)(1)(A), 6662(d)(1)(A). In determining whether there is a substantial understatement of tax liability, the amount of an understatement is reduced by any portion attributable to the tax treatment of an item for which the taxpayer had substantial authority or by any item with respect to which the relevant facts affecting the taxpayer's treatment are adequately disclosed in the return or in a statement attached to the return. Secs. 6661(b)(2)(B), 6662(d)(2)(B).

Petitioner bears the burden of proving that respondent's determination of an addition to tax under section 6661 or accuracy-related penalty under section 6662 is erroneous. See Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Petitioner also bears the burden of proving that he had substantial authority for omitting an item from his return. See Tippin v. Commissioner, 104 T.C. 518, 535 (1995). Petitioner has failed to satisfy his burden of proving that respondent's determination is erroneous. Accordingly, we sustain respondent's determination that petitioner is liable for the addition to tax prescribed by section 6661 with respect to his 1988 return, and the accuracy-related penalties prescribed by section 6662 with respect to his 1989, 1990, and 1991 returns.

Decision will be entered

under Rule 155.